ROMUALDO GARCÍA VERA, demandante y apelado, *v.* ROSA RATERA, demandada y apelante.

No. 4708.—*Sometido:* Marzo 20, 1929. *Resuelto:* Febrero 14, 1930.

F. *Soto Gras*, abogado del apelante; *E. López Tizol*, abogado del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La corte de distrito dictó sentencia a favor del demandante, un contratista, por la suma de $580.95—la cantidad reclamada en la primera de tres causas de acción—y declaró sin lugar una contrademanda.

El contrato contenía la siguiente cláusula:

"2.—El Sr. García Vera dará principio a las obras tan pronto este contrato esté firmado y las continuará sin interrupción de manera que la casa esté terminada en el plazo de cincuenta y seis días

a contar desde esta fecha; y si transcurrida dicha fecha no pudiese hacer entrega de la casa completamente reparada, pagará a la propietaria en concepto de daños líquidos que descontará dicha propietaria del importe de las obras, la suma de diez dólares ($10.00) por cada día que transcurriere sin haber terminado las reparaciones."

Pocos días después de haberse dado comienzo al trabajo, fué suspendido por unas dos semanas por orden de las autoridades municipales, ínterin se practicaba una investigación para determinar si una ordenanza municipal había sido infringida. El término dentro del cual debería concluirse la obra venció en septiembre 26. El 29 de septiembre, el contratista ingresó en un hospital donde, como resultado de una seria intervención quirúrgica, estuvo recluído por varias semanas. Mientras permanecía allí, fué visitado por Rosa Ratera, su esposo Isidro Solé y su hermana María Ratera.

La versión que da el contratista de esta entrevista es que las personas que lo visitaron le anunciaron que habían venido a rescindir el contrato; que el testigo se negó a ello por haber invertido dinero en la obra y porque una rescisión del contrato perjudicaría su reputación; que dichos visitantes le aseguraron que no sufriría perjuicio alguno, y propusieron el nombramiento de dos peritos, uno por ellos y otro por el testigo, para que determinaran cuál de las partes era deudora de la otra, y para que fijaran a la vez el importe de la deuda; que el testigo se avino a esto, designando a Martínez de León, y que la demandada nombró a José A. Canals.

Al terminar esta plática, García llamó a Martínez de León, quien había salido del cuarto al llegar Isidro Solé, su esposa y su cuñada. Martínez declaró en el juicio que García entonces le dijo en presencia de los demás visitantes: "Estas señoras quieren rescindir un contrato, y deseo que usted me sirva de perito".

Isidro Solé declaró que su esposa le dijo a García Vera: "García, hasta la fecha yo lo había considerado mucho, aun en perjuicio mío. Usted me nombra un tasador, y yo nombro otro tasador para hacernos cargo de esta obra". Explicó

que el propósito era el de "ver lo que había allí realizado y devolver los materiales que no eran nuestros". Manifestó además que nada se dijo en el hospital acerca de daños y perjuicios o sobre el dinero pagado a un sereno que vigilaba los materiales no usados.

La primera partida alegada en la contrademanda era de $420 para cubrir los cuarenta y dos días que transcurrieron entre septiembre 26, fecha en que debía terminarse la obra, y noviembre 8, en que los peritos calcularon el valor del trabajo efectuado, tasaron los materiales existentes, y determinaron la suma abonada por la demandada. La segunda partida era de $79.72 satisfechos por la demandada a un sereno, a razón de $14 semanales desde la fecha en que García ingresó en el hospital. La tercera partida era de $175 que se alegaba debían cargarse al demandante por defectos encontrados en el piso de la segunda planta. La demandada admite en su contrademanda un crédito sobre esta cantidad, de $55, concedido al contratista por los dos peritos, reduciendo así el importe a $120.

La suma total reclamada en la contrademanda sobrepasaba la que según los peritos se le adeudaba al contratista por la cantidad de $38.77, y la demandada solicitó sentencia a su favor por ese saldo.

La apelante no pone en tela de juicio la cantidad que, según el juez de distrito, se adeudaba al actor a virtud del informe de los peritos, pero alega que la corte erró al declarar que el contratista no era responsable de la demora de quince días debida a la orden librada por las autoridades municipales, y que no debía responder a razón de diez dólares diarios por el tiempo que duró esa interrupción.

De acuerdo con los términos del contrato, García estaba obligado a pagar diez dólares diarios por concepto de daños líquidos desde la fecha de entrega especificada. La monta de tales daños y perjuicios no debía medirse por el tiempo que durara cualquier interrupción antes de vencer el término para

concluir la obra. No fué la intención de las partes que doña. Rosa percibiera compensación a razón de diez dólares diarios por cada día que transcurriera desde la fecha de entrega estipulada, y que a la vez recibiera indemnización adicional por el tiempo que se perdiera antes del vencimiento del término para dar fin a la obra.

Otra contención es que la corte erró al resolver que el contratista no era responsable a razón de diez dólares diarios por los veinte y siete días que estuvo recluído en un hospital.

García dice que el contrato fué rescindido en octubre 20. Ningún otro testigo trata de fijar la fecha exacta de la conversación sostenida en el hospital. Martínez dice que García estaba convaleciendo. Solé habla de una visita anterior. Si la fecha dada por García es correcta, veinte y uno de los veintisiete días habían transcurirdo en el momento de celebrarse el convenio verbal. Solé admite que nada se dijo acerca de daños y perjuicios al tiempo de efectuarse ese convenio. García manifiesta que si hubiera mediado cualquier reserva del derecho a daños líquidos, él no hubiese consentido la rescisión del contrato. La reserva del derecho a recobrar los daños y perjuicios que se irrogaren hasta la fecha en que la conversación tuvo lugar es inconsistente con la declaración que se atribuye a doña Rosa por su consorte, al efecto de que la consideración que ella había tenido para con García habíale ocasionado una pérdida pecuniaria. El derecho a recobrar daños líquidos por una demora ulterior en la terminación de la obra desde la fecha en que se celebró el convenio según el cual García debía descontinuar la misma, no puede reconciliarse con la seguridad que se le dió de que nada perdería a virtud de ese convenio. Fuera del testimonio de García, no es probable que él hubiese consentido una reserva expresa del derecho a una compensación de diez dólares diarios hasta la fecha en que doña Rosa terminara la obra. Todas las circunstancias tienden a excluir la teoría de la su-

pervivencia del derecho a percibir daños líquidos de acuerdo con los términos del contrato original.

De conformidad con el convenio original, se tendría derecho a recibir daños líquidos al tipo especificado hasta que García diese fin a la obra. La posibilidad de la terminación de la obra desapareció al celebrarse el convenio de que García no seguiría con la obra. La dificultad de fijar un nuevo período de tiempo, en ausencia de un nuevo convenio, queda ilustrada por el hecho de que la demandada en su contrademanda trata de recobrar daños y perjuicios hasta la fecha en que los peritos rindieron su informe, mientras que el señalamiento de errores especifica el período durante el cual García permaneció en el hospital. Una reclamación de daños y perjuicios hasta la fecha en que se radicó la contrademanda, basada en la teoría de que tales daños continuarían irrogándose hasta la fecha en que la demandada diese fin a la obra, hubiera sido igualmente plausible. Lo cierto es que, a falta de un nuevo convenio, ora expreso o implícito, ninguna de las partes del contrato original podía reconstruir en forma modificada la estipulación original relativa a daños líquidos, y así mantenerla con vida o revivirla. Tampoco la corte de distrito podía obtener un resultado similar tratando de efectuar un nuevo contrato para las partes envueltas en los dos contratos preexistentes.

Cuando doña Rosa le dijo a García el 20 de octubre que su indulgencia hasta aquella fecha había envuelto un sacrificio pecuniario, y que él nada perdería al aceptar la transacción propuesta por ella, renunció a cualquier derecho que pudiera haber tenido al reembolso del dinero que le pagó al sereno.

La apelante también insiste en que la corte inferior cometió error al no conceder la partida de $120 para cubrir supuestos defectos en el piso de la segunda planta.

El contrato disponía que al terminarse una porción específica del trabajo, incluyendo el piso y las divisiones de

la planta superior, el contratista recibiría $475. Los planos y especificaciones exigían que se repusieran las tablas defectuosas en el piso antiguo. El antiguo piso debía recibir entonces una mano de carbolíneo y ser cubierto con cartón embreado cuyos extremos exteriores deberían prolongarse hacia arriba hasta una distancia de cuatro pulgadas a lo largo de las paredes, a fin de hacer que el piso fuese a prueba de agua. Entonces el nuevo piso debería colocarse sobre el papel con las junturas en dirección contraria al antiguo.

Los tasadores hallaron que el contratista había hecho el 38 por ciento de la obra, y que, por tanto, tenía derecho a $418 de los $475.

De acuerdo con el contrato, el próximo plazo debía ser de $550. Los tasadores llegaron a la conclusión de que el contratista había efectuado el 90 por ciento del trabajo requerido y que tenía derecho a $495 de este plazo.

Un recibo suscrito por el contratista demuestra que él había recibido $200 por esta parte de la obra, y que doña Rosa Ratera había retenido en su poder $175 hasta tanto se corrigieran los supuestos defectos en el piso. Nada hay que demuestre que alguna parte de estos $175 fuera en ocasión alguna satisfecha al contratista.

Solé declaró que el piso no era a prueba de agua. El contratista testificó que el trabajo fué efectuado a tenor de los planos y especificaciones, y que él había consentido que se retuvieran los $175 a fin de evitar contratiempos y de continuar gozando de la confianza de la dueña de la propiedad. Solé declaró además que cuando se echaba agua en el piso, se filtraba. No entró en detalles respecto a las condiciones de la prueba practicada. Aun si se hubiese demostrado que se efectuó el pago total del piso, la aceptación por parte del juez sentenciador del testimonio del contratista en torno a la naturaleza del trabajo y de su explicación acerca de la retención de los $175, no hubiese equivalido a un error que diera lugar a la revocación.

 La contención final de la apelante es que la corte erró al concederle las costas al demandante.

Hay algún peso en el argumento de que el demandante no logró recobrar por su segunda y tercera causas de acción. Esto queda contrarrestado por otras consideraciones. El demandante se vió obligado a defenderse de una contrademanda en exceso de la cantidad especificada en su primera causa de acción. Esa cantidad había sido determinada por dos peritos tasadores, uno de los cuales fué designado por la demandada. La corte de distrito declaró que la contrademanda carecía de mérito. Fué propiamente desestimada.

El demandante obtuvo sentencia por el total de la suma reclamada en su primera causa de acción. Fuera de la cuestión relativa a las costas y a la contrademanda, la apelante no pone en tela de juicio la corrección de esa sentencia.

El artículo 313 de nuestro Código de Enjuiciamiento Civil lee como sigue:

"El demandado en cualquier pleito, podrá en todo tiempo antes de celebrarse el juicio, o de pronunciarse la sentencia, presentar al demandante una proposición de consentir que se dicte sentencia en contra suya por determinada cantidad o bienes, o por el concepto que se expresará en la proposición. Si aceptare el demandante la proposición, y así lo manifestare dentro de cinco días, presentará a la corte aquélla, con prueba de haber notificado al demandado su aceptación y en su vista deberá el secretario anotar la sentencia que se dicte de conformidad. Si no se hiciere la notificación de la aceptación, se considerará retirada la proposición, y no podrá aducirse como prueba en el juicio; y si el demandante no pudiese obtener una sentencia más favorable, no sólo no podrá reclamar las costas devengadas después de la proposición, sino que tendrá que pagar las causadas por el demandado desde la fecha en que éste propuso la transacción."

Si la demandada hubiese notificado oportunamente al demandante su conformidad en aceptar una sentencia por la cantidad reclamada en la primera causa de acción que ya se había llegado a la conclusión de que el demandante había devengado, no hubiera habido necesidad de celebrar un jui-

cio y no hubiese surgido ninguna cuestión de costas a menos que se le impusieran al demandante en caso de que éste hiciera una tentativa infructuosa de recobrar por concepto de dos o más de las tres causas de acción. La demandada no creyó conveniente aprovecharse de esa oportunidad.

La corte de distrito no abusó de su discreción al concederle las costas al demandante.

*Debe confirmarse la sentencia apelada.*