MONSERRATE RIVERA, demandante y apelada, *v.* JUAN J. GERARDINO, ENRIQUE TORO CASALS y JOAQUÍN ORTIZ, demandados y apelantes.

Núm. 7452.—*Sometido:* Abril 5, 1938. *Resuelto:* Abril 22, 1938.

*Felipe Colón Díaz,* abogado de los apelantes; *Fernando B. Fornaris,* abogado de la apelada.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Monserrate Rivera demandó a Juan José Gerardino, Enrique Toro Casals y Joaquín Ortiz reclamándoles tres mil dólares y seis centavos por daños y perjuicios por embargo indebido. Obtuvo sentencia por ochocientos veintiocho dólares con la obligación de pagar las costas del pleito causadas a partir de octubre 18, 1935. De la sentencia apelaron para ante este tribunal los demandados.

En mayo 9, 1929, Juan José Gerardino demandó a Monserrate Rivera en reclamación de novecientos ocho dólares, y para asegurar la efectividad de la sentencia que pudiera dictarse a su favor, embargó mil ochocientos setenta y dos dólares y seis centavos que la Rivera tenía depositados en el American Colonial Bank, Sucursal de Ponce, mediante fianza de dos mil dólares que prestaron Enrique Toro Casals y Joaquín Ortiz. El pleito se falló en contra del demandante y surgió entonces este otro en reclamación de perjuicios por embargo indebido.

La demandante alegó que la cantidad embargada había desaparecido; que había dejado de ganar intereses ascendientes a ochocientos veintiocho dólares en cierta operación que tenía concertada y que no pudo realizar por el embargo, y que pagó por su defensa en el pleito honorarios de abogado por valor de quinientos dólares de los cuales Gerardino sólo le había reintegrado doscientos.

Contestaron los demandados aceptando algunos hechos y negando otros y luego, de acuerdo con el artículo 313 del Código de Enjuiciamiento Civil, ed. de 1933, presentaron una moción de transacción proponiendo que se dictara sentencia

en su contra por los intereses—al tipo legal o al que fijara la corte—sobre los $1,872.06 embargados, desde mayo 9, 1929, en que se decretó el embargo en el pleito por ellos seguido contra Monserrate Rivera hasta abril 1, 1933 en que fué nuevamente embargada en otro pleito que contra la Rivera entablara Salvio Durán Vázquez.

La transacción no se aceptó por la demandante. Fué el pleito a juicio y la corte declaró probado que el dinero embargado no había desaparecido si que se había extraído del American Colonial Bank, Sucursal de Ponce, por el márshal de la corte y por él depositado en el Banco de Ponce en cuenta de inversiones y allí estaba convertido en $2,284.34, que fueron embargados en abril 1, 1933, en el pleito que siguiera Salvio Durán contra la Sucesión de Emilio B. Durán compuesta de su viuda Monserrate Rivera y de su hermana Ana Inés Durán sobre nulidad de testamento, motivo por el cual no debía condenarse a los demandados a reintegrarla a la demandante, y que nada tenía ésta tampoco derecho a percibir por los honorarios de abogado reclamados porque dichos honorarios fueron fijados en doscientos dólares por la propia corte en el pleito correspondiente y los había ya satisfecho Gerardino.

En cuanto a la ganancia dejada de obtener, la corte declaró probado que ciertamente Monserrate Rivera tenía concertado un préstamo hipotecario por mil ochocientos dólares al doce por ciento de interés anual que no pudo realizar por el embargo y en su consecuencia decidió que debía dictar como dictó sentencia a su favor por la ganancia dejada de percibir que fijó en ochocientos veintiocho dólares, sin especial condenación de costas.

Los demandados pidieron a la corte que reconsiderara su sentencia rebajando de ella la cantidad que la suma embargada había ganado en el banco o sean trescientos once dólares y sesenta y nueve centavos e imponiendo las costas a la demandante por no haber aceptado la transacción. La Corte accedió a la reconsideración en cuanto a las costas pero no en cuanto a la rebaja de la ganancia en el banco.

No conforme los demandados interpusieron esta apelación señalando dos errores como cometidos por la corte al condenarlos a pagar $828 en vez de $516.31 y al no incluir en las costas los honorarios de abogado.

A nuestro juicio el primer error fué cometido, mas no el segundo.

La corte sentenciadora reconoció el hecho de la ganancia obtenida por la suma embargada depositada en el banco, pero negó la rebaja pedida por los demandados porque "quedando sujetos a dicho embargo"—el trabado en el pleito entablado por Salvio Durán—"tanto la suma principal como los intereses que produzca, no puede esta corte (hacer) formar parte de los $828 de la sentencia que tiene derecho a recibir la aquí demandante, una suma que está sujeta a otro embargo."

No nos convence el razonamiento. La suma perteneciente a la Rivera fué embargada indebidamente por Gerardino. Por ello éste fué condenado a reintegrar a aquélla lo que hubiera ganado la suma prestada al doce por ciento anual durante el tiempo que medió entre su embargo y el otro trabado por Durán. La condena comprendía todo cuanto tenía derecho a reclamar la demandante de Gerardino. Y si es lo cierto que durante el indicado tiempo la suma había ganado en el banco $311.69 ¿cómo no tomar en consideración esa ganancia?

Sin hacer una renuncia en forma a dichos $311.69, la parte apelada consigna en su alegato lo que sigue:

"Si alguna controversia en el futuro ocurriese con respecto a esos intereses, la cuestión sería a dilucidarse entre Gerardino, el autor y promotor del embargo original, y Salvio Durán, el autor y promotor del segundo embargo. Son cuentas a dilucidar entre ellos, no por una parte que probó hasta la saciedad su derecho ante la corte, como lo es doña Monserrate Rivera en este caso."

Tampoco nos convence el argumento. Los $311.69 pertenecen claramente a la Rivera. Si el embargo trabado por Durán no tiene fundamento, principal e intereses quedarán a su libre disposición. Si el embargo es procedente y Durán tiene una reclamación bien fundada contra ella ¿de qué puede

quejarse? Toda persona está obligada a satisfacer lo que debe, a cumplir sus obligaciones, a no retener lo que no le pertenece, a no disfrutar de ganancias que no son suyas. Y si ése es el caso del pleito de Durán, a Durán corresponderán en justicia el principal y los intereses. Si no, repetimos, principal e intereses irán a la demandante y entonces de subsistir la sentencia tal como fué dictada, recibiría como ganancia dejada de obtener no el doce por ciento ordenado por la corte, si que el doce más la ganancia del banco.

A nuestro juicio el mismo razonamiento que llevó a la corte sentenciadora a no condenar a los demandados a reintegrar a la demandante la suma embargada que también estaba sujeta al embargo que tomó como base para negar la rebaja, debió llevarla a tomar en consideración los intereses—ganancia ya obtenida y acreditada en la cuenta de la demandante en el banco—al fijar la cantidad que venían obligados los demandados a reintegrar a la demandante.

En cuanto al segundo error señalado, ya hemos dicho que a nuestro juicio no fué cometido. La corte sentenciadora aplicó rectamente el artículo 313 del Código de Enjuiciamiento Civil invocado por los demandados, al condenar ''en costas'' a la demandante a partir de la fecha de la moción de transacción, sin comprender en ellas honorarios de abogado.

Dicho artículo es como sigue:

''El demandado en cualquier pleito, podrá en todo tiempo antes de celebrarse el juicio, o de pronunciarse la sentencia, presentar al demandante una proposición de consentir que se dicte sentencia en contra suya por determinada cantidad o bienes, o por el concepto que se expresará en la proposición. Si aceptare el demandante la proposición, y así lo manifestare dentro de cinco días, presentará a la corte aquélla, con prueba de haber notificado al demandado la aceptación y en su vista deberá el secretario anotar la sentencia que se dicte de conformidad. Si no se hiciere la notificación de la aceptación, se considerará retirada la proposición, y no podrá aducirse como prueba en el juicio; y si el demandante no pudiese obtener una sentencia más favorable, no sólo no podrá reclamar *las costas deven-*

*gadas después de la proposición, sino que tendrá que pagar las cau-
sadas por el demandado desde la fecha en que éste propuso la transac-
ción."* (Itálicas nuestras.)

Es igual al 997 del Código de Enjuiciamiento Civil de California y la jurisprudencia del continente interpretativa de lo que significan y comprenden las palabras "costas" y "honorarios" tal como se resume en Corpus Juris es al efecto de que:

"Las costas son cierta concesión autorizada por el estatuto para reembolsar a la parte victoriosa los gastos incurridos en la prosecución o defensa de un recurso o procedimiento especial."

" .      .      .      .      .      .      .      .      .      .      .

"Las palabras 'honorarios' y 'costas' son usadas con frecuencia indistintamente como si tuvieran el mismo significado. No obstante costas y honorarios son esencialmente distintos. Las primeras son una concesión hecha a una de las partes por los gastos incurridos en la prosecución o defensa de un litigio—un incidente de la sentencia; mientras que los últimos son una compensación a los funcionarios públicos por los servicios prestados a individuos, en el desarrollo de la causa." (15 Corpus Juris, págs. 19 y 20.)

Habiéndose resuelto en el caso de *Young Chun* v. *Robinson,* 21 Hawaii 368, 370, que:

"La palabra 'costas' de ordinario no incluye los honorarios de abogado. La regla general es, en ausencia de un estatuto, que los honorarios de abogado no son costas, y esta regla es aplicable tanto a pleitos en equidad como a recursos en derecho." (15 C. J., pág. 20, nota 11–(*a*).)

Jurisprudencia que está en línea con la de esta propia Corte Suprema sentada al interpretar en 1912, en el caso de *Veve* v. *Municipio de Fajardo,* 18 D.P.R. 764, 770, otros artículos del propio Código de Enjuiciamiento Civil, como sigue:

"Los artículos 327 y 339 que dejamos transcritos hacen referencia a costas, desembolsos y honorarios de abogados y por tanto, nosotros debemos aceptar esta misma distinción, sin que podamos comprender en el concepto de costas, desembolsos y honorarios.

" .      .      .      .      .      .      .      .      .      .      .

"Bajo el concepto de costas vienen comprendidos los derechos y las indemnizaciones que consistan en cantidades fijas e inalterables, determinadas anticipadamente por las leyes, reglamentos o aranceles, entendiéndose por desembolsos los demás gastos del juicio, o sean las indemnizaciones y derechos, que no estén comprendidos en el concepto expresado. Bajo la denominación de honorarios de abogado viene comprendida la remuneración de sus servicios profesionales."

Recientemente en el caso de *McCormick* v. *González,* 52 D.P.R. 912, se dijo:

"Además, se trata de una sentencia por desistimiento y esta corte en el caso de *Sucesión Ramos Latour* v. *Rivera,* 41 D.P.R. 286, 287, resolvió:

" 'De acuerdo con el artículo 192 del Código de Enjuiciamiento Civil cuando un demandante desiste de un caso y conviene en pagar las costas, no consiente en pagar los honorarios de abogado, y si la corte le impone las costas sin excluir tales honorarios, o en otras palabras, si no limita las costas a las que se originen en la secretaría, tal demandante tiene derecho a apelar de la sentencia fijando las costas en esta forma ilimitada. . . .'

"La decisión en el caso de *Sucesión Ramos Latour* v. *Rivera,* supra, se dictó antes de regir la repetida ley núm. 69 de 1936. . . . La decisión se ha citado a los efectos de fijar el alcance que tenían y tienen las palabras 'previo pago de costas' usadas en el número primero del Artículo 192 del Código de Enjuiciamiento Civil que autoriza al demandante a desistir de su demanda de acuerdo con las reglas que establece."

*Por virtud de todo lo expuesto debe modificarse la sentencia recurrida tomando en consideración los $311.69 ya acreditados a la demandante en su cuenta del Banco de Ponce como ganancia obtenida por la suma embargada en él depositada, condenándose en su consecuencia a los demandados a satisfacerle lo que falta para completar los $828 de ganancia dejada de obtener en el préstamo hipotecario que no pudo realizar por razón del embargo de Gerardino, o sean $516.31, y así modificada, confirmarse.*