MARCOS MORELL CORRADA ET AL., demandantes recurridos, *v.* LUIS FRANCISCO OJEDA ET AL., demandados peticionarios.

*Número:* CC-99-175 *Resuelto:* 20 de julio de 2000

---

*Juan R. Marchand Quintero* y *Francisco Ortiz Santini*, de *Rivera Cestero & Marchand Quintero*, abogados de la parte peticionaria; *Luis Berríos Amadeo*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El señor Luis Francisco Ojeda, productor y animador

del programa radial *"Esta noche con Ojeda"*, durante los días 14 y 15 de octubre de 1996, hizo expresiones vinculando al Lcdo. Marcos Morell Corrada con actos impropios indicativos de corrupción. A raíz de tales manifestaciones, el 16 de octubre de ese mismo año el licenciado Morell, su esposa y la sociedad legal de gananciales constituida por ambos radicaron demanda ante el Tribunal de Primera Instancia, Sala Superior de San Juan, contra el señor Ojeda, su esposa, la sociedad legal de gananciales compuesta por éstos y el Mundo Broadcasting Corp.; acción basada en los Arts. 1–9 del Código de Enjuiciamiento Civil, 32 L.P.R.A. ant. secs. 1–9, el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, y el Art. 2, Sec. 8, de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. Los demandantes alegaron, en síntesis, que el señor Ojeda promovió un patrón de difusión de información falsa, libelosa, calumniosa y difamatoria contra los demandantes. Adujeron, además, que el codemandado Ojeda actuó en forma negligente, maliciosa, temeraria, premeditada e intencional con el fin de causarles daño. Señalaron, adicionalmente, que éste permitió que terceras personas se manifestaran de igual forma en contra del licenciado Morell. Finalmente, solicitaron que se les concediera la suma de un millón trescientos mil dólares ($1,300,000) por concepto de sufrimientos y angustias mentales.[1]

La parte demandada sometió su contestación el 4 de marzo de 1996, levantando varias defensas afirmativas; entre otras, alegó que las expresiones fueron realizadas en virtud de su facultad constitucional a la libertad de expresión, y que lo publicado era información cierta. Dicha parte demandada, adicionalmente, sostuvo que las fuentes utilizadas para obtener la información eran confiables, que el

---

[1] Posteriormente, esta demanda fue enmendada para incluir como codemandantes a los hijos del licenciado Morell e incrementar la suma reclamada a tres millones cien mil dólares ($3,100,000).

licenciado Morell era una figura pública, y que no medió negligencia ni malicia en las expresiones.

El 27 de noviembre de 1996 la representación legal de los demandados notificó a los demandantes una oferta de sentencia y pago, conforme a las disposiciones de la Regla 35.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, por la cantidad de cinco mil dólares ($5,000).[2] Esta oferta fue rechazada por la parte demandante, mediante carta fechada el 5 de diciembre de 1996, por entender que la cantidad ofrecida era irreal e irrazonable.[3]

El 25 de septiembre de 1997, la parte demandada radicó una moción de sentencia sumaria, a la cual se opusieron los demandantes. Luego de presentados varios escritos en torno a la referida moción, el 23 de diciembre de 1997 el Tribunal de Primera Instancia, Sala Superior de San Juan, dictó sentencia declarando con lugar la moción de sentencia sumaria, ordenando, en consecuencia, la desestimación de la demanda. Condenó, además, a la parte demandante a pagar las costas y los gastos, *negando de forma expresa la concesión de honorarios de abogado.* El foro de instancia, al así resolver, razonó que:

> Surge de los documentos presentados por la parte demandada que la oferta de Sentencia le fue cursada a la parte demandante allá para el 27 de noviembre de 1996. La misma fue rechazada por la parte demandante mediante carta de 5 de diciembre de 1996. *Para aquel entonces se encontraba planteada ante el [t]ribunal la controversia en torno a si debía ordenarse a la parte demandada la divulgación de sus fuentes de información en contestación a un interrogatorio cursádole por las demandantes.* Los fundamentos opuestos por las partes entonces para sostener sus posiciones no encontraban apoyo jurisprudencial en nuestra jurisdicción: *por tanto, se trataba de un asunto novel.*

---

[2] En la oferta notificada, los demandados advirtieron a la parte demandante sobre el riesgo al que se exponían de pagar honorarios de abogado, en caso de recibir una cantidad idéntica o inferior a la ofrecida, o de ser desestimada su reclamación.

[3] A pesar de haber rechazado la oferta, la parte demandante instó a los demandados a celebrar una reunión con el propósito de discutir la posibilidad de llegar a una transacción que pusiera fin al pleito.

El Tribunal *no* puede acceder a la solicitud de recobro de honorarios de honorarios de abogado presentada por la parte demandada *a la luz de los incidentes procesales vigentes a la fecha en que se cursa la oferta de sentencia*. A ese entonces, el tribunal tenía ante sí la resolución de un asunto hasta entonces no pautado en nuestra jurisdicción. (Citas omitidas.) (Énfasis suplido.) Apéndice, págs. 724–725.

Inconforme con esta última determinación, el 30 de diciembre de 1997 la parte demandada presentó una moción solicitando, de manera específica, la imposición de honorarios, por entender que tenía derecho a ello conforme a las disposiciones de la Regla 35.1 de Procedimiento Civil, ante. Mediante resolución emitida el 28 de mayo de 1998, el Tribunal de Primera Instancia se reafirmó en su posición y, en su consecuencia, denegó por segunda ocasión la imposición de honorarios de abogado.

La parte demandada solicitó la revisión de esta resolución, mediante recurso de *certiorari* presentado el 30 de junio de 1998, ante el Tribunal de Circuito de Apelaciones. Señaló que los fundamentos expresados por el tribunal de instancia, negando los honorarios, eran erróneos, por estar basados los mismos en la alegada ausencia de temeridad por parte de los demandantes. Adujo que su reclamación de honorarios está basada en las disposiciones de la Regla 35.1 de Procedimiento Civil, ante, la cual alegadamente no requiere una previa determinación de temeridad. El 30 de octubre de 1998, el Tribunal de Circuito de Apelaciones dictó sentencia mediante la cual confirmó la resolución del tribunal de instancia,[4] aun cuando, realmente, por fundamentos un tanto distintos. Razonó, en síntesis, el foro apelativo intermedio que:

A la luz de la normativa expuesta, y habiendo examinado cuidadosamente el expediente de autos, resolvemos que la

---

[4] En esa misma fecha, el Tribunal Apelativo emitió una segunda sentencia confirmando la decisión de instancia respecto a la acción de daños presentada; esto es, confirmando la sentencia sumaria emitida mediante la cual se desestimó la demanda radicada.

oferta de transacción presentada por el señor Ojeda *no fue razonable dentro del contexto específico del caso de autos.* Por tanto, la Regla 35.1 *resulta inoperante* en el presente caso y los honorarios de abogado exigidos por el señor Ojeda bajo su autoridad no proceden. *H.U.C.E. de Ame. v. V. & E. Eng. Const., supra.*

Nuestro examen de la apelación presentada por el Lcdo. Morell de la sentencia desestimatoria de su caso en instancia, Apelación KLAN9800802, nos convence de que al momento de la presentación de la oferta de transacción, *no era realista* optar por la cuantía de $5,000 propuesta, *si consideramos que la pretensión fundada de obtener una victoria legal venía acompañada de un reclamo sustancialmente mayor al ofrecimiento de $5,000.* (Énfasis suplido.) Apéndice, pág. 753.

El 9 de marzo de 1999, la parte demandada radicó ante este Tribunal una petición de *certiorari* en revisión de la sentencia emitida por el Tribunal de Circuito de Apelaciones relativa a la controversia sobre la procedencia, o no, de los honorarios de abogado. Dicha parte demandada le imputó al tribunal apelativo intermedio haber errado:

... al confirmar la denegatoria al recobro de la partida de honorarios de abogado reclamada por los peticionarios al amparo de la Regla 35 de Procedimiento Civil. Petición de auto de *certiorari*, pág. 3.

Expedimos el recurso. Estando en posición de resolver el mismo, procedemos a así hacerlo.

I

La Regla 35.1 de Procedimiento Civil, ante,([5]) según enmendada, establece:

*En cualquier momento antes de los diez (10) días precedentes al comienzo del juicio, la parte que se defiende de una reclamación podrá notificar a la parte adversa una oferta para consentir a que se dicte sentencia en su contra por la cantidad o por la propiedad o en el sentido especificado en su oferta, con las cos-*

---

([5]) 32 L.P.R.A. Ap. III.

*tas devengadas hasta ese momento.* Si dentro de los diez (10) días siguientes a la notificación la parte adversa notificare por escrito que acepta la oferta, cualquiera de las partes podrá presentarla junto con la notificación de su aceptación y la prueba de su notificación, y entonces el secretario del tribunal dictará sentencia. Si no fuere así aceptada, será considerada como retirada y la misma no será admisible en evidencia, excepto en un procedimiento para determinar costas, gastos y honorarios de abogado. *Si la sentencia que obtuviere finalmente la parte a quien se le hizo la oferta no fuera más favorable, ésta tendrá que pagar las costas, gastos y honorarios de abogado incurridos con posterioridad a la oferta.* El hecho de que se haga una oferta y esta no sea aceptada no impide que se haga otra subsiguiente. Cuando la responsabilidad de una parte haya sido adjudicada mediante sentencia pero queda aún por resolverse en procedimientos ulteriores la cuantía de los daños o extensión de dicha responsabilidad, la parte cuya responsabilidad se haya adjudicado podrá notificar una oferta de sentencia y la misma tendrá el mismo efecto que una oferta hecha antes de[l] juicio si se notifica dentro de un término razonable no menor de diez (10) días antes del comienzo de la vista. (Énfasis suplido.)

La antes transcrita disposición reglamentaria permite a la parte que se defiende de una reclamación presentar una oferta a la parte contraria, en cualquier momento previo a los diez (10) días precedentes al comienzo del juicio, consintiendo a que se dicte sentencia en su contra conforme a los términos de la oferta. Si ésta no fuese aceptada, según dispone la propia regla, se considerará retirada la misma y sólo será admisible como evidencia en un procedimiento para fijar costas, gastos y honorarios de abogado. Si por el contrario, la oferta fuera aceptada, cualquiera de las partes podrá presentarla junto con la aceptación y la prueba de su notificación, para que el Secretario del Tribunal dicte sentencia. Esta disposición tiene su origen en la Regla 35.1 de Procedimiento Civil de 1958, ante, y en la Regla 68 de Procedimiento Civil Federal, 28 U.S.C. Véase Informe del sobre las Reglas de Procedimiento Civil Propuestas por el Comité de Procedimiento Civil, Secretariado de la Conferencia Judicial, 1978, pág. 103. Su *obvio propósito* es fomentar las transacciones, evitando así la celebración del

juicio en su fondo. *Ramallo Brothers v. Federal Express Corp.*, 129 D.P.R. 499, 508 (1991); 12 *Wright, Miller and Marcus, Federal Practice and Procedure 2d* Sec. 3001 (1997); *Marek v. Chesny*, 473 U.S. 1, 5 (1984).

■ A pesar de que la citada Regla 35.1 está disponible únicamente para la parte que se defiende de una reclamación, la misma constituye, en cierto sentido, un *mecanismo neutral*, el cual resulta beneficioso para ambas partes. De un lado, provee un mecanismo para que la parte demandante pueda recibir una compensación en un pleito en el cual, finalmente, no hubiese recibido indemnización alguna, o hubiera recibido una inferior a la ofrecida. De otro lado, permite a la parte demandada librarse de los costos de un pleito, de todos los contratiempos que conlleva este proceso y de poder ser responsabilizada por una suma de dinero mucho mayor a la ofrecida.

Dicha disposición reglamentaria, además, resulta beneficiosa para el sistema judicial en general, pues contribuye a la pronta disposición de las reclamaciones, reduciendo así la carga de los tribunales. En resumidas cuentas, la referida Regla 35.1 provee un mecanismo para que ambas partes en el pleito evalúen los riesgos y costos del litigio, y consideren seriamente la posibilidad de transigir el pleito en etapa anterior al juicio. *Ramallo Brothers v. Federal Express Corp.*, ante, pág. 510; *Marek v. Chesny*, ante, pág. 10; *Wright and Miller*, ante.

■ La parte o disposición neurálgica de la Regla 35.1 de Procedimiento Civil, ante, en lo pertinente al caso que hoy ocupa nuestra atención, es aquella en la que se establece que, si la oferta fuese rechazada y "la sentencia que obtuviere finalmente la parte a quien se le hizo la oferta no fuera más favorable, ésta *tendrá* que pagar las costas, gastos y honorarios de abogado incurridos con posterioridad a

la oferta".(6) (Énfasis suplido.) Íd. Ello no obstante, resulta importante *enfatizar* el hecho de que este Tribunal estableció la norma a los efectos de que, para que una oferta de sentencia surta el efecto señalado anteriormente, la misma debe ser "realista, razonable y producto de la buena fe". *H.U.C.E. de Ame. v. V. & E. Eng. Const.*, 115 D.P.R. 711, 716 (1984). Estos criterios operan en virtud del *principio de buena fe*, el cual cobija todo nuestro sistema de derecho. Además, los mismos son necesarios para que se cumpla con el propósito básico de la Regla de fomentar las transacciones, *de forma tal que no se hagan ofertas irrisorias o irrazonables*. Íd.

## II

La controversia planteada en el presente caso se circunscribe a determinar si la imposición de honorarios de abogado a la parte demandante al amparo de las disposiciones de la citada Regla 35.1 —en la situación en que dicha parte no obtuvo una sentencia "más favorable" que la oferta de sentencia que rechazó— está, o no, subordinada a que el foro de instancia haga una determinación sobre temeridad; dicho de otra manera, si la imposición de honorarios de abogado en esta clase de situaciones opera, o no, de manera automática.

A pesar de que en el pasado nos hemos enfrentado a dicha controversia —véase *Ramallo Brothers v. Federal*

---

(6) Como norma general, el mecanismo de oferta de sentencia adoptado por la mayoría de los estados no concede honorarios de abogado. Solamente algunos de ellos permiten la concesión de esta partida bajo ciertas circunstancias. R.C. Fagg, *Montana Offer of Judgement Rule: Let's Provide Bonafide Settlement Incentives*, 60 Mont. L. Rev. 39, 59 (1999). De igual forma, la Regla 68 de Procedimiento Civil federal, 28 U.S.C., tampoco dispone para que se otorguen honorarios de abogado. En esta jurisdicción solamente se ha permitido la concesión de esta partida en aquellos casos en que la regla aplica junto a otra disposición que autoriza dichos honorarios. *Marek v. Chesny*, 473 U.S. 1, 7–8 (1984); T.D. Rowe, Jr., "Offer of Judgement" en 13 *Moore's Federal Practice 3rd*, Sec. 68.02[4], pág. 68–8 (2000).

*Express Corp.*, ante— *no* hemos resuelto la misma de manera definitiva.([7]) Como expresáramos en el antes mencionado caso, en lo pertinente, los proponentes de la alternativa a los efectos de que la imposición de honorarios, bajo la Regla 35.1 de Procedimiento Civil, ante, es automática señalan el carácter aparentemente mandatorio de la terminología utilizada en la citada Regla 35.1 —el uso del vocablo "tendrá"— y el hecho de que los redactores de las Reglas de Procedimiento Civil colocaron el trámite de oferta de transacción, no como parte de la sección de costas y honorarios de abogado de dichas reglas, y sí como un "procedimiento especial" bajo la sección de procedimientos con antelación al juicio, lo que tiende a indicar —según esta posición— que la referida Regla 35.1 tiene vida propia y separada.

■ Por otro lado, y conforme expresáramos en *Ramallo Brothers v. Federal Express Corp.*, ante, págs. 518–519, los defensores de la posición contraria,

> ... esto es, de que la imposición de honorarios de abogado bajo la Regla 35.1 de Procedimiento Civil, ante, *no* opera en "forma automática", señalan que nuestra tradición jurídica en lo referente al aspecto de honorarios de abogado siempre ha estado predicada en la determinación de temeridad, cuestión que siempre ha descansado en la sana discreción del tribunal sentenciador. Esto es, se aduce que la citada Regla 35.1 no puede ni debe ser interpretada de forma tal que neutralice totalmente la discreción judicial, facultad del magistrado que, en última instancia, evita la comisión de injusticias al atemperar, y hacer flexible, la aplicación de la letra fría de la ley.
>
> Los promoventes de esta alternativa señalan, con alguna razón, que a diario en nuestros tribunales de instancia se dilucidan casos en que la parte demandante, *de buena fe*, cree que su posición y reclamo prevalecerá, resultado que en la mayoría de las situaciones dependerá de la determinación de credibilidad que, respecto a un testigo, haga el juzgador de los hechos. Señalan, como ejemplo, los casos de mala práctica o impericia de

---

([7]) En *Ramallo Brothers v. Federal Express Corp.*, 129 D.P.R. 499 (1991), no resolvimos dicha cuestión por razón de que los hechos particulares del caso lo hacían innecesario.

la medicina en que, a pesar de que la cuantía de los daños puede no estar en controversia, el resultado del caso depende exclusivamente de si el tribunal acepta o no la teoría de los peritos del demandante o de la parte demandada. En resumen, se argumenta que una interpretación de la Regla 35.1 de Procedimiento Civil, ante, como la que propone la parte demandante peticionaria puede otorgarle una indebida ventaja al litigante poderoso frente al que no lo es, resultando la misma en un freno indebido a la litigación genuina y de buena fe por cuanto puede inhibir al ciudadano que honestamente se siente perjudicado por la acción de otro y que acude al foro judicial en busca de justicia. ...

## III

En reiteradas ocasiones hemos señalado, como principio rector en materia de hermenéutica, que "[a]l interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido *que asegure el resultado que originalmente se quiso obtener*". (Citas omitidas.) *Chase Manhattan Bank v. Mun. de San Juan*, 126 D.P.R. 759, 766 (1990). Véanse R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, pág. 245; *Vázquez v. A.R.Pe.*, 128 D.P.R. 513, 523 (1991); *Dorante v. Wrangler of P.R.*, 145 D.P.R. 408 (1998); *García v. E.L.A.*, 146 D.P.R. 725 (1998). Nuestra obligación consiste en imprimirle efectividad a la intención del legislador, para así garantizar que se cumpla con el propósito para el cual fue creada la medida. *Vázquez v. A.R.Pe.*, ante.

Con el fin de cumplir con esta obligación, inicialmente debemos atender el texto de la ley; esto es, y conforme establece el Art. 14 del Código Civil, 31 L.P.R.A. sec. 14, cuando "la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu". Sin embargo, si la aplicación literal de un estatuto nos lleva a un resultado absurdo o ello

conlleva un resultado opuesto a la verdadera intención o propósito del legislador, la literalidad puede ser ignorada. *Clínica Juliá v. Sec. de Hacienda*, 76 D.P.R. 509, 520 (1954).(8) Otra fuente que nos permite conocer la intención del legislador es el historial legislativo de la medida. *Dorante v. Wrangler of P.R.*, ante.

 Según indicáramos previamente, el propósito de la citada Regla 35.1 consiste en *fomentar* las transacciones, evitando así la celebración de un juicio. Para lograr este objetivo, se creó un mecanismo que impone a la parte demandante que rechaza una oferta la penalidad de pagar a la parte demandada las costas, gastos y honorarios. Esta medida es una fundamentalmente punitiva. Esto así surge claramente de su historial legislativo. El origen de la Regla 35.1 de Procedimiento Civil vigente se remonta al Art. 313 del Código de Enjuiciamiento Civil de 1933 (32 L.P.R.A. ant. sec. 1361).(9) Distinto a la Regla 35.1 vigente, el Art. 313 (32 L.P.R.A. sec. 1361 (ed. 1956)) solamente condenaba

---

(8) Consistentes con tal razonamiento, en *Mun. de San Juan v. Banco Gub. Fomento*, 140 D.P.R. 873, 884 (1996), expresamos:

"En ocasiones, es necesario rechazar la interpretación literal del texto cuando ésta conduce a un resultado distinto al que el legislador intentó. *Pueblo v. Seda*, 82 D.P.R. 719, 725 (1961). De igual forma, al precisar la voluntad del Legislador, debemos presumir la sensatez y razonabilidad de dichos actos legislativos. Una interpretación de la ley que conduzca a una conclusión absurda, debe ser rechazada. E. Bernier y J. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. 1, pág. 242."

(9) El Art. 313 del Código de Enjuiciamiento Civil de 1933 (32 L.P.R.A. sec. 1361 (ed. 1956)) disponía:

"El demandado en cualquier pleito, podrá en todo tiempo antes de celebrarse el juicio, o de pronunciarse la sentencia, presentar al demandante una proposición de consentir que se dicte sentencia en contra suya por determinada cantidad o bienes, o por el concepto que se expresará en la proposición. Si aceptare el demandante la proposición, y así lo manifestare dentro de cinco días, presentará a la corte aquélla, con prueba de haber notificado al demandado su aceptación y en su vista deberá el secretario anotar la sentencia que se dicte de conformidad. Si no se hiciere la notificación de la aceptación, se considerará retirada la proposición, y no podrá aducirse como prueba en el juicio; y *si el demandante* no pudiese obtener una sentencia más favorable, no sólo no podrá reclamar las costas devengadas después de la proposición, sino que tendrá que pagar las causadas por el demandado desde la fecha en que éste propuso la transacción."

El Art. 313 del Código de Enjuiciamiento Civil de 1933, ante, no modificó el lenguaje de la versión aprobada en el 1904. Véase *García v. Ratera*, 40 D.P.R. 595, 602 (1930).

al pago de las costas. Este artículo era igual al Art. 997 del Código de Enjuiciamiento Civil de California,([10]) el cual fue derogado y sustituido por la Sección 998 de Procedimiento Civil, Cal. Civil Proc. Code Sec. 998. Esta última tiene el efecto de *penalizar* al demandante que rechaza una oferta razonable y posteriormente recibe una cantidad inferior a la ofrecida. Véanse: *Mesa Forecast Products, Inc. v. St. Paul Mercury Insurance Company*, 86 Cal. Rptr.2d 398, 401 (1999); *Brown v. Nolan*, 159 Cal. Rptr. 469, 470 (1979).

■ Posteriormente, en 1943, fueron aprobadas las Reglas de Enjuiciamiento Civil para las Cortes de Puerto Rico, las cuales incorporaron gran parte de las Reglas Federales de Enjuiciamiento Civil.([11]) *Disdier Pacheco v. García*, 101 D.P.R. 541, 545 (1973). A diferencia del referido Art. 313, la Regla 68 de Enjuiciamiento Civil contemplaba la posibilidad de que un tribunal concediera honorarios de abogado. Sobre este asunto, prescribía:

> Si la parte adversa dejare de obtener una sentencia más favorable que la que le fue ofrecida, en ese caso no podrá recobrar costas devengadas con posterioridad a la fecha de la oferta y estará obligada a pagarlas a partir de dicha fecha, todo sin perjuicio de la concesión de honorarios de abogado si la Corte entendiere que cualquiera de las partes ha procedido con temeridad. Reglas 68 de Enjuiciamiento Civil de 1943 (32 L.P.R.A. ant. Ap. I).

■ En el 1958, fueron aprobadas las Reglas de Procedimiento Civil. En ese año se incorporó la referida Regla 35.1, a la cual corresponde el texto de la regla actual. Esta disposición estuvo basada en la Regla 68 de Enjuiciamiento Civil de Puerto Rico, ante, y la Regla 68 de Proce-

---

([10]) Véase *Rivera v. Geradino*, 53 D.P.R. 107, 112 (1938).

([11]) Las Reglas de Enjuiciamiento Civil fueron aprobadas por el Tribunal Supremo en virtud de la Ley Núm. 9 de 5 de abril de 1941. Estas reglas no derogaron las disposiciones del Código de Enjuiciamiento Civil, sino que éste se mantuvo en vigor para aquellos casos y recursos a los cuales no les aplicaba las Reglas de Enjuiciamiento Civil. *Martínez Fernández & Cía. v. García*, 68 D.P.R. 391, 394 esc. 1 (1948).

dimiento Civil Federal, 28 U.S.C., vigentes en ese entonces. Una de las diferencias entre la vigente Regla 35.1 de 1958, ante, y las disposiciones de las cuales procedió, es que la primera añadió "los gastos y honorarios de abogado como *penalidad* en adición a las costas". (Énfasis suplido.) Comité Consultivo sobre las Reglas de Enjuiciamiento Civil, *Anteproyecto de Reglas de Enjuiciamiento Civil para el Tribunal General de Justicia de Puerto Rico*, 1954, pág. 84. Al mismo tiempo, la citada Regla 35.1 de 1958 cubrió también lo dispuesto por el Art. 313 del Código de Enjuiciamiento Civil, ante. Íd.

Recientemente, en *Ramallo Brothers v. Federal Express Corp.*, ante, reafirmamos el *carácter punitivo* de la medida.

> Dicho propósito u objetivo [el de fomentar las transacciones] se logra al proveérsele a las partes ... un mecanismo procesal mediante el cual puede transigir la acción ... y al establecer una *sanción* para el demandante ... que rechaza la oferta formal de transacción, insiste en continuar adelante con su causa de acción y luego obtiene un remedio por sentencia que no es más favorable que la oferta que se le hizo. Petición de *certiorari*, pág. 7 esc. 27.

Siendo esta medida una esencialmente punitiva, a nuestro juicio resulta mandatorio que el tribunal tome en consideración la conducta de la parte que se pretende castigar. Es principio fundamental de nuestro sistema de administrar justicia no castigar a un litigante que ha acudido a la vía judicial para vindicar un derecho por el simple hecho de no haber prevalecido, o de haber recibido una cantidad inferior a la ofrecida. *Santos Bermúdez v. Texaco P.R., Inc.*, 123 D.P.R. 351, 355 (1989); *González v. The Commonwealth Ins. Co.*, 140 D.P.R. 673 (1996). Debe siempre existir un balance entre el interés de promover las transacciones y el problema que crearía la imposición de honorarios a un litigante de buena fe. "El interés gubernamental de mantener los tribunales abiertos al público es una ca-

racterística vital recogida tanto en las reglas de procedimiento civil como en nuestra jurisprudencia". *Santos Bermúdez v. Texaco P.R., Inc.*, ante, pág. 355.

Resolver de otra forma, implicaría la imposición de una sanción a una parte que ha litigado un asunto de forma genuina y de buena fe, lo que resultaría contrario al propósito de la citada Regla 35.1 y a nuestra obligación de interpretar las reglas de forma tal que "garanticen una solución *justa*, rápida y económica". (Énfasis suplido.) Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.([12])

De otra parte, somos del criterio que no debemos establecer una norma que "obligue" a una parte demandante a aceptar una oferta que honesta y realmente ésta considera irrazonable o irrisoria so pena de castigarlo por ello mediante la imposición de lo que podría resultar cuantiosos honorarios de abogado. Ello resulta totalmente contrario a la sabia y justa norma que este Tribunal estableciera en *H.U.C.E. de Ame. v. V & E Eng. Const.*, ante —a los efectos de que la referida Regla 35.1 resulta inoperante cuando la oferta es irrazonable o irrisoria— ya que dicha norma, al concederle facultad o discreción al tribunal para determinar cuando una oferta adolece de esa característica, precisamente parte de la premisa de que la imposición de honorarios de abogado, bajo la Regla 35.1, ante, *no* es automática *ni* mandatoria.

A tenor con lo antes expresado, y en vista de nuestra obligación de "mantener abiertos" los tribunales a aquellos litigantes de buena fe, *resolvemos* que la citada Regla 35.1 de Procedimiento Civil, *no* opera de manera automática en la situación prevista en la misma; requiriéndose, por el contrario, para la imposición de honorarios de abogado a la parte demandante que rechazó una oferta de

---

([12]) Al interpretar las Reglas de Procedimiento Civil, hemos reconocido como principio rector el asegurar una solución justa, rápida y económica. *Molina v. C.R.U.V.*, 114 D.P.R. 295, 298 (1983).

transacción "más favorable" que la sentencia finalmente obtenida por ella en el caso, *una previa determinación de temeridad o arbitrariedad en dicha actuación por parte del tribunal de instancia.*

A esos efectos, y a los fines de evaluar la razonabilidad de la oferta, la veracidad de la misma y la buena fe de la parte demandada, los tribunales deberán tomar en cuenta diversos factores a la luz de las circunstancias particulares del caso. Entre éstos, consideramos de vital importancia los siguientes: (1) la cuantía ofrecida, (2) los términos de la oferta, (3) la controversia planteada y (4) la etapa de los procedimientos al momento en que se realiza la oferta.[13]

## IV

En el presente caso, y conforme reseñáramos al comienzo, tanto el tribunal de instancia como el Tribunal de Circuito de Apelaciones le denegaron a la parte demandada, aun cuando por fundamentos un tanto distintos, su solicitud de que se aplicaran al caso las disposiciones de la Regla 35.1 de Procedimiento Civil, ante, esto es, que se le impusiera honorarios de abogado a la parte demandante *conforme* se establece en la citada disposición reglamentaria.

---

[13] Desde hace varios años, otras jurisdicciones han considerado la conducta de la parte demandante al evaluar una oferta de sentencia. En este sentido, el Tribunal Supremo de Nevada, interpretando su Regla 68 equivalente a nuestra Regla 35.1, señaló en *Beattie v. Thomas*, 668 P.2d 268, 274 (Nev. 1983), lo siguiente:

"On the other hand, while the purpose of NRCP 68 is to encourage settlement, it is not to force plaintiffs unfairly to forego legitimate claims. In exercising its discretion regarding the allowance of fees and costs under NRCP 68, *see Armstrong v. Riggi, supra,* the trial court must carefully evaluate the following factors: (1) whether the plaintiff's claim was brought in good faith; (2) whether the defendants' offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fee sought by the offeror are reasonable and justified in amount."

Estos criterios han sido sostenidos en decisiones posteriores. Véanse: *Laforge v. Univ. and Community College System of Nevada,* 2000 WL 351204, pág. 4; *Dillard Dept. Stores, Inc. v. Beckwith,* 989 P.2d 882, 888 (Nev. 1999); *Schwartz v. Estate of Greenspun,* 881 P.2d 638, 642 (Nev. 1994).

De una lectura cuidadosa de la resolución emitida por el tribunal de instancia no surge, con absoluta claridad, si dicho foro judicial denegó dicha solicitud por entender que la parte demandante fue, o no, temeraria. Somos del criterio, en consecuencia, que lo más apropiado es devolver el caso a dicho foro para que éste haga una *determinación específica* al respecto, conforme a los factores anteriormente enumerados.

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Andréu García y el Juez Asociado Señor Hernández Denton disintieron sin opinión escrita. El Juez Asociado Señor Corrada Del Río se inhibió. El Juez Asociado Señor Rivera Pérez no intervino.