DANIEL W. STEVENS,

*vs.*

ACADIA DAIRIES, INC., a corporation of the State of Delaware.

In the Matter of Exceptions on Behalf of General Creditors to Claim of Bondholders.

*New Castle, Jan. 7, 1927.*

*Henry R. Isaacs* and *Benjamin T. Biggs*, for exceptants.

*David J. Reinhardt*, for claimants.

*J. Frank Biggs*, for receiver.

THE CHANCELLOR. The exceptants object to the claims as valid ones.

The first ground upon which the general validity of the claims is attacked is that the directors' meeting which authorized the bonds secured by a mortgage was an invalid one in that only one director was present in person, the other two being represented by proxy. All action taken at that meeting, it is contended was void. This is true, because directors of a corporation cannot act by proxy. *Lippman v. Kehoe Stenograph Co.*, 11 *Del. Ch.* 80, 95 *A.* 895.

But this does not end the matter. What happened was that two meetings of the directors were held at both of which a bond issue secured by a mortgage was assumed to be authorized. It was the later meeting which for the reason just stated was invalid. No attack is made upon the regularity of the first meeting. At the first meeting the bond issue and mortgage were authorized and the People's National Bank of Middletown was designated by the resolution as the person to act as trustee under the mortgage. At the later meeting, where proxies were used, the directors assumed to rescind the earlier resolution and to adopt in its stead another resolution authorizing a bond issue and mortgage. The only difference between the resolutions was that in place of the People's Bank as trustee, the second resolution named the Security Trust & Safe Deposit Company as trustee. The mortgage was executed with the Security Trust & Safe Deposit Company named therein as trustee and the bonds which are the basis of the claims here excepted to were issued. The second meeting was, as stated, an unlawful one. Not only was the action in authorizing the bonds and mortgage invalid, but so also for the same reason was its action rescinding the first resolution invalid.

This being so, the only question (assuming without deciding that the exceptants can raise it) that can remain touching the legality of the bonds is whether or not they can be sustained under the first resolution. If they cannot be so sustained, it must be solely because the trustee named in the mortgage is not the People's

National Bank of Middletown which was designated by the first resolution. The substitution of the Security Trust & Safe Deposit Company as trustee, even though not formally authorized by the directors, is a circumstance of no material moment. The company recognized the bonds not only by their formal issuance and delivery, but when issued by paying interest upon them.

But, secondly, it is argued, if it be granted that the act of issuing the bonds and securing them by the mortgage was the corporate act, yet they cannot claim a priority because they were given without consideration at a time when the corporation was insolvent.

Were the bonds given without consideration? The evidence is clear that full consideration was given. The facts are as follows: The claimants were holders of bonds of another corporation known as Middletown Farms, Inc. That company went into the hands of a receiver appointed by this court. At a sale of all its assets one Cook bought in all the assets upon which its bonds were a first lien. Cook was a bondholder. He acted for himself and all the other bondholders. He paid for the property by delivering into the registry of this court the bonds of himself and associates (all of whom are the claimants here) upon each of which bonds the proper credits of payment, based on the price Cook had bid for the property, were duly indorsed. Cook announced publicly at the sale that he was bidding for the bondholders. Before Cook bid at the sale he entered into an agreement with the Middletown Farms' bondholders that if the property was acquired by him on behalf of all, he would organize a new corporation to which he would convey the property and would cause it to issue to them its own bonds secured by mortgage upon an agreed basis, so that the old bondholders of Middletown Farms should obtain liens in the same relative amounts upon the property in the hands of the new corporation evidenced by the new company's mortgage bonds. In obedience to the obligation of his agreement, Cook organized the new company, calling it Acadia Dairies, Inc., the insolvent corporation in this cause. Cook was its sole owner and stockholder. For reasons which need not be stated, but which are acceptable, he did not cause the bonds of the new company to be authorized and issued immediately. In a few months, however, he did pro-

cure the directors to meet and adopt the authorization of the mortgage and bonds, in which People's National Bank of Middletown was to act as trustee. An unwillingness of that bank to act caused further delay and was the occasion for the later meeting at which proxies were sought to be used. After the later meeting the mortgage was executed to the Security Trust & Safe Deposit Company as trustee and the bonds issued as had been previously agreed. From the date of the organization of the new company it carried in its liabilities the amount of bonds held by the claimants notwithstanding the bonds had not yet as a matter of fact been issued. The obligation was thus recognized from the date of the company's inception and interest was paid on the bonds when it fell due.

This being the history of the transaction, it is perfectly clear that a consideration was given for the bonds. 1 *Jones on Mortgages, par.* 162; 19 *R. C. L.* 276. That consideration composed the entire property with which the company commenced business, and, in view of the agreement made at the time, was to be evidenced by what in substance would be a purchase money lien. The company took the property from Cook with full knowledge of all the antecedent facts. Cook was its organizer and promoter and as stated, its sole owner. His knowledge was its knowledge. The two directors whom he selected to act with him had the same knowledge.

It was, of course, competent for the company to adopt and ratify an agreement made by the organizer and promoter in contemplation of its organization. *Commissioners of Lewes v. Breakwater Fisheries Co.,* 13 *Del. Ch.* 234, 117 *A.* 823. Having received the claimants' property from Cook, it should have performed the obligations which were made a condition precedent to Cook's right to convey, it being a purchaser with full notice.

The consideration was antecedent to the date of the bonds. But the bonds were agreed to follow. Under these circumstances the holders of the bonds were from the beginning equitable lienors. *In re N. Y. & Baltimore Inland Transportation Co., (D. C.)* 276 *F.* 145, affirmed in *(C. C. A.)* 279 *F.* 818. This results from the principle that equity will treat as done that which by agreement ought to be done. Under the facts with which we are here dealing the claimants are entitled to have the mortgage securing·their bonds treated as a valid mortgage good in point of priority as against

general creditors. 1 *Jones on Liens, par.* 77, *p.* 74. There is nothing in the law relating to receiverships in this State which would deprive the claimants of the benefit of their lien which at first was equitable and is now legal. No question of a prohibited preference, such as arises in bankruptcy cases under the Federal Bankruptcy Act, (*Comp. St.* § 9585, *et seq.*) interfered here to oust the claimants of their priority. I have examined the cases cited by the solicitors for the exceptants and find nothing in them in conflict with the conclusion herein reached.

Exceptions overruled, and order accordingly.