**Howard S. SPERING, Plaintiff,**

v.

**Arthur J. SULLIVAN, Individually, et al., Defendants.**

**Civ. A. No. 4222.**

United States District Court, D. Delaware.

July 10, 1973.

Rodman Ward, Jr., and Jan S. Black, Prickett, Ward, Burt & Sanders, Wilmington, Del., for plaintiff.

Victor F. Battaglia, Biggs & Battaglia, Samuel R. Russell, Wilson & Russell, and Andrew B. Kirkpatrick, Jr., Walter L. Pepperman, II, and Robert F. Stewart, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This is a civil action in which the plaintiff, Howard S. Spering (Spering) is seeking damages from the attorneys who represented him in an earlier action before this Court against Texas Butadiene & Chemical Corporation (TB&C), Civil Action No. 3047 (the TB&C action), for their alleged negligence, breach of contract and fraud which resulted in the dismissal of the plaintiff's prior action for lack of prosecution. The matter is presently before the Court on cross motions for summary judgment.

In their motion for summary judgment, the defendants argue that as a prerequisite to establishing their liability for any malfeasance in the prosecution of the plaintiff's initial suit, the plaintiff must demonstrate that his cause of action against TB&C was meritorious. This, they contend, he cannot do. The defendants maintain that considering the factual record in a light most favorable to Spering, as a matter of law, the affirmative defenses raised by TB&C were sufficient to bar recovery, and therefore, preclude any judgment against them.

The plaintiff seeks summary judgment on the issue of liability for certain damages which are alleged to have arisen as a result of the defendants' actions, and which are unrelated to the validity of the initial claim against TB&C.[1] Re-

---

1. These elements of damage for which the plaintiff prays judgment are as follows:

(1) plaintiff's expenses and lost income in prosecuting legal action to reverse the dismissal of his action against TB&C, (2) plaintiff's expenses and loss of income incurred in his action against TB&C prior to its dismissal, (3) punitive and exemplary damages assessed against defendants for the willful and flagrant abuse of their fiduciary duties to plaintiff (4) interest on any amount which the Court

covery of these damages is alleged to be merited in light of the uncontroverted evidence including statements and admissions of the defendant, Arthur J. Sullivan (Sullivan).

## THE DEFENDANTS' MOTION

Predicated upon the lack of merit in the plaintiff's initial claim against TB&C, the defendants' summary judgment motion involves the facts and circumstances surrounding the Spering-TB&C relationship. In the TB&C action, Spering sought the recovery of a $901,322.83 counsel fee on the basis of an alleged oral agreement for subsequent compensation premised upon the value of his services and the ultimate success of the TB&C venture. The defendants presently contend that in its answer, TB&C, in addition to denying the existence of any such oral agreement, raised seven affirmative defenses which were sufficient to defeat Spering's initial claim and which entitle the defendants to the entry of summary judgment in their behalf. The seven affirmative defenses cited by the defendants are as follows:

1. the claim is barred by the Statute of Limitations;

2. the claim is barred by the Statute of Frauds;

3. the claim is unenforceable because recovery of contingent fees for services rendered with respect to government contracts is against public policy;

4. the claim is based upon a contract which is too vague and is unenforceable;

5. the claim is without merit on principles of estoppel;

6. the claim is barred because any alleged oral agreement was subsequently terminated by novation, and

7. the claim is meritless because the contract was a "promoter's contract" which was not adopted by TB&C.

The plaintiff opposes the entry of summary judgment against him on the dual grounds that: a) there are genuine issues of material fact which are presently in dispute, and b) the plaintiff has not completed his discovery.

The latter objection would ordinarily be sufficient to preclude resolution of a matter on summary judgment, and especially in this instance, when the defendants' alleged malfeasance is the proximate cause of the discovery deficiencies.[2] Such objection would have been more properly raised prior to agreeing to and undertaking the extensive briefing and argument schedule involved on these motions. However, this question need not be considered since after a review of the 300 plus pages of briefs and voluminous documentary and testimonial exhibits thereto, the Court is of the opinion that the legal and factual issues raised in the several affirmative defenses are not, at this time susceptible to resolution on summary judgment.

■■ Even a perfunctory perusal of the parties' recitations of the facts pertinent to the TB&C action reflects a substantial dispute over certain facts and, more importantly, the appropriate inferences to be drawn from the particular facts which are not in dispute. The party opposing the summary judgment motion is, of course, entitled to all favorable factual inferences, and the movant bears the burden of demonstrating

finds would have been recovered against TB&C and on plaintiff's expenses and loss of income occasioned by defendants' negligence, breach of contract or fraud, (5) plaintiff's costs and counsel fees in this action

2. The defendants' protestations regarding the futility of additional discovery, "a meaningless lengthening of . . . a quixotic epic", might be substantially

more persuasive absent their admitted responsibility for the necessity of Spering embarking on the very crusade which they seek to deter. The numerous factual disputes raised on brief evidence that the request for additional discovery amounts to more than a mere woeful tilting at windmills and actually countenances a necessary chore in Spering's quest for his Dulcinea.

the absence of disputed facts. See generally 6 Moore, Federal Practice, ¶56.15 [8] (2nd Ed.). Although several of the affirmative defenses raise issues which are apparently legal in nature, the Court is of the opinion that a full resolution of the disputed facts and inferences is prerequisite to a determination of the legal questions. Thus, the defendants have not borne their burden and summary judgment must be denied.

The Court does not intend to discuss each affirmative defense and each disputed factual issue, but will instead cite certain of the questions it considers illustrative of the factors precluding summary judgment. The fundamental difficulty confronting the defendant is an uncertainty regarding the precise nature of the original oral contract between Spering and TB&C. This difficulty is heightened by the fact that Spering offered a rather generalized depiction of the agreement during his deposition. It is further intensified by the defendants' efforts to construct the initial contract by reference to various portions of Spering's deposition in attempts to sustain a construction or interpretation of the contract which is particularly susceptible to their several defenses. While the defendants' efforts might be persuasive if the Court was the ultimate fact finder, they cannot be persuasive at this juncture in the litigation.[3]

An examination of the Statute of Frauds defense and its applicability as a bar to the enforcement of the alleged oral contract demonstrates the necessity for an exact determination of the contractual terms and undertakings. This necessity is particularly evidenced in the plaintiff's contention that the oral contract might have been performed within one year and is therefore without the Statute. D.C.Code § 28–3502, see Warner v. Texas & Pacific Railway Co., 164 U.S. 418, 17 S.Ct. 147, 41 L.Ed. 495 (1896), and Snyder v. Hillegeist, 100 U.S. App.D.C. 368, 246 F.2d 649 (1957). Both parties are apparently in agreement that had the government refused to enter into negotiations, execute a facilities contract for the project envisioned or allow accelerated amortization for TB&C, the TB&C venture would have failed and Spering's obligations would have ceased to exist. Such a failure could have occurred within one year.

Citing selections from Spering's deposition regarding the long-term nature of the agreement with its attendant responsibilities which could not have been performed within one year and the contingent nature of the fee dependent upon the ultimate success of the enterprise, the defendants maintain that Spering's legal services prior to any such failure would not be performance under the contract so as to remove it from the Statute. In opposition, the plaintiff argues that his testimony supports a construction of the oral contract which would permit performance within a year, i. e. he would provide all necessary legal services for TB&C at a minimum daily fee with subsequent compensation dependent upon the value of his services and the ultimate success of the project. Under this construction, Spering asserts that in the event of a failure of TB&C, he would have performed his contractual obligations by providing the requisite legal services up until the date of such failure.

These alternative interpretations of the Spering-TB&C agreement exemplify the impossibility of distinguishing between an occurrence which would permit a defeasance or cancellation and that which would permit performance until the fact finder makes a determination of the precise terms of the alleged oral contract. See generally 3 Williston on Contracts, § 498B (3rd Ed.). In support of their position that the failure of TB&C

---

3. It should be noted that while the defendants made an ostensible concession of the existence of an oral agreement for the purposes of this motion, throughout their briefs they frequently raise arguments predicated upon the position that no such agreement ever existed. See e. g. Defendants' Supplementary Responsive Brief, p. 5 of footnote.

would constitute an occurrence permitting annulment, the defendants rely on the case of Coan v. Orsinger, 105 U.S. App.D.C. 201, 265 F.2d 575 (1959). In the *Coan* case, the D.C. Circuit Court made reference to the necessity of distinguishing between a contingency which fulfills the obligation and one which defeats or prevents its performance, and, in a two–one decision, ruled that in light of its terms, the particular contract before them was within the Statute of Frauds. The court's discussion, particularly concerning the express contract provisions and the intentions of the parties, evidences the importance of ascertaining the exact nature of the contract herein. Considered with factual inferences most favorable to Spering, the Spering-TB&C contract could be construed so that TB&C's failure would be considered an occurrence permitting Spering's prior services to constitute performance.[4]

The defendants' contention that the conversation and ensuing oral agreement between Spering and Purvin established a promoter's contract for which TB&C is not liable absent explicit adoption cannot be resolved on summary judgment. The question of whether TB&C had impliedly adopted the oral contract by acceptance of its benefits with knowledge involves disputed factual issues. While the knowledge of a promoter without additional circumstances will not ordinarily be imputed to the corporation, in the instant case, Purvin became an officer and director of TB&C and, considering the August 1955 Purvin-Spering telephone conversation in a manner most favorable to Spering, reaffirmed the initial oral agreement after the formation of the corporation and at a time when he was evidently a principal

therein. Certainly, this latter conversation and knowledge of the reaffirmation of the 1954 oral agreement could be imputed to TB&C. See 1 Fletcher Cyclopedia Corporations § 219; Acme Precision Products, Inc. v. American Alloys Corp., 422 F.2d 1395 (8th Cir. 1970); Chartrand v. Barney's Club, Inc., 380 F.2d 97 (9th Cir. 1967). Under Delaware law, TB&C would have impliedly adopted the contract and be liable under its terms if it accepted the benefits with knowledge. In re Acadia Dairies, Inc., 15 Del.Ch. 248, 135 A. 846 (1927). See generally 1 Fletcher Cyclopedia Corporations, § 211; In re Super Trading Co. Inc., 22 F.2d 480 (2nd Cir. 1927); Chartrand v. Barney's Club Inc., supra. While courts have most frequently imputed knowledge and implied corporate adoption of a promoter's contract in situations where the promoter was, in effect, an alter ego of the corporation, see Stringer v. Electronics Supply Corp., 23 Del.Ch. 79, 2 A.2d 78 (1938) and Federal Land Value Ins. Co. v. Taylor, 56 F.2d 351 (9th Cir. 1932), the Court is of the opinion that such a situation is not a prerequisite to enforcing a promoter's contract especially when, as here, the contract was primarily executory in nature prior to incorporation and performance thereunder occurred during an eight to ten year period subsequent to such incorporation.

The Statute of Limitations defense is also dependent upon the exact Spering-TB&C relationship and the nature of Spering's undertaking. If Spering entered an employee-employer relationship, then apparently, the one year statute would apply, 10 Del.C. § 8110, Sorensen v. Overland Corp., 142 F.Supp. 354 (D.Del.1956); however, if he entered the more normal attorney-client relationship of independent contractor,

---

4. Although it is clear that for Spering to receive his subsequent compensation the contract could not have been performed within one year, the Court is of the opinion that this does not preclude a construction removing the agreement from the Statute. The Statute of Frauds focuses on the issue of performance and not the question of alternative modes of compensa-

tion. If the contract contains alternative forms of performance, it is enforceable so long as one alternative may be performed within a year. See 3 Williston, supra. The Court has been unable to locate any authority which would alter that rule merely because the compensation sought could not have been earned within the year.

the three year statute of limitations would be applicable, 10 Del.C. § 8106, Areo Service Corp. v. Gordy, 10 Terry 59, 109 A.2d 393 (Del.Supr.1954). Since the agreement apparently required services of a continuing nature and failed to provide for a termination date, Spering's claim would not have accrued prior to the time when his services were actually terminated. Lalley v. Escoett, 79 U.S.App.D.C. 306, 146 F.2d 667 (1945). This was evidently at the earliest some time in late June or early July 1962, and is therefore within three years of the June 1965 date when Spering employed the defendants to handle his case. See 45 A.L.R.2d 5, 22–25, Anno. § 6.

▪ The defendants' defense that subsequent written agreements executed between Spering and TB&C establishing and amending retainer and per diem amounts for Spering's legal services constituted novations and terminated any prior oral agreement is dependent upon factual inferences and determinations which are not sufficiently supported on the present record. The authorities cited by the defendants evince the necessity for ascertaining the intention of the parties and their assent in the substitution of a new agreement for its predecessor. 15 Williston on Contracts §§ 1869, 1870 (3rd Ed.) The subsequent written retainer agreements entered by Spering make no reference to the initial oral contract. While this is consistent with the defendants' contention that there was no such initial agreement, a question irrelevant to this motion, it is hardly sufficient to demonstrate the parties' recognition of the initial oral contract and expressed intention to abrogate said contract. See Blyther v. Pentagon Fed. Credit Union, 182 A.2d 892 (D.C.Mun.App.1962). Although subsequent inconsistent contracts may evidence an intention to substitute a new obligation, 6 Corbin on Contracts, § 1296, p. 212, the inconsistency must be clear and unambiguous. The fact that the February 1, 1956 and August 31,

1959 letter agreements make no reference to the initial agreement provision for subsequent compensation based on the value of Spering's contribution to the success of the enterprise raises the inference that said latter agreements were in no way intended to alter, amend or terminate the contingency aspect of the compensation arrangement.

The remaining defenses suffer from similar deficiencies which will preclude summary judgment on the question of the merit and value of Spering's initial claim against TB&C. The Court is of the opinion that further discussion of these factual disputes is not necessary since the previous discussion is adequate to manifest the nature of the uncertainties involved.

### THE PLAINTIFF'S MOTION

As noted previously, the plaintiff has moved for summary judgment on the question of the defendants' liability for damages which are unrelated to the value or merit of the TB&C claim.[5] It is his position that the defendants' negligence and breach of contract are conclusively established by the admission of Sullivan and the docket entries in C.A. 3047. The defendants object to the entry of summary judgment against them on the ground that the plaintiff has not shown that their negligence was the proximate cause of the plaintiff's damages.

▪ Fundamental to the defendants' position is their contention that the defenses raised in opposition to Spering's efforts to recover on his claim against TB&C are complete defenses to any recovery in this action. That proposition is erroneous. To be sure, a plaintiff in a legal malpractice action must establish the merit and value of his initial claim to recover damages for the value of the loss of that claim, see generally 45 A.L. R.2d supra, § 5, pp. 19–21. However, it does not follow that the plaintiff must establish the validity of the initial claim to recover damages incurred by reason

---

5. See footnote one for an enumeration of these items of damage.

of his attorney's negligence which are in no manner related to the merit of that claim. See generally, RePass v. Vreeland, 357 F.2d 801 (3rd Cir. 1966).

 The additional costs and expenses which the plaintiff incurred in attempting to reinstate his initial claim are expenditures arising directly and proximately from the dismissal of the TB&C action for failure to prosecute. These expenditures would never be incurred in the ordinary, non-negligent prosecution of the TB&C action. Moreover, the record is clear (see e. g. Defendants' Supplementary Responsive Brief, p. 7) that Sullivan was responsible for the failure to prosecute the TB&C action, and for the ensuing dismissal. For these reasons, the Court is of the opinion that the plaintiff has established the requisite elements of liability to entitle him to the entry of summary judgment for the additional costs and expenses incurred in attempting to reinstate C.A. 3047.

The defendants argue that such reinstatement proceedings were unproductive since TB&C had already admitted liability for the sums eventually recovered by Spering in the subsequent settlement in C.A. 3047, and that the plaintiff should therefore not recover these expenditures. Even assuming that Spering must demonstrate that his appeal was successful, a highly doubtful prerequisite in light of the fact that it would appear self-evident that a litigant would at least be entitled to endeavor to restore himself to the status he occupied prior to the negligence of his attorney and the loss of his lawsuit,[6] the record clearly evidences that Spering's reinstatement efforts did produce monetary return in an increase in the amount of money which TB&C was offering for settlement of his claim for post-1964 legal services.

The remaining damages sought by the plaintiff are at this time either too uncertain,[7] too intertwined with[8] or too dependent in part upon the outcome of Spering's initial TB&C claim and his present overall claim[9] to be resolved on this motion.

For the reasons stated above, the plaintiff's motion is granted in part and denied in part, and the defendants' motion is denied.

Submit order.

---

6. This proposition is especially pertinent herein since the defendants continued to represent the plaintiff during part of his subsequent efforts to reinstate his lawsuit. Such action would certainly preclude their present contention that the reinstatement efforts were meritless.

7. E. g. Loss of income.

8. E. g. Costs and counsel fees in this action.

9. E. g. Nominal damages for the TB & C claim.