EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Luis Ortiz Muñoz y otros | |
| --- | --- |
| Demandantes-recurridos | Certiorari |
| vs. | 2007 TSPR 79 |
| Jaime Rivera Martínez y otros | 170 DPR _____ |
| Demandado-peticionario | |

Número del Caso: CC-2005-1142

Fecha: 1 de mayo de 2007

Tribunal de Apelaciones:

      Región Judicial de Caguas

Juez Ponente:

      Hon. Jorge L. Escribano Medina

Abogados de la Parte Peticionaria:

      Lcdo. José M. Ramírez Hernández
      Lcdo. José Rafael Meléndez Mulero

Abogada de la Parte Recurrida:

      Lcda. Carmen Aponte Vázquez

Materia: Incumplimiento de Contrato de Sociedad

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Ortiz Muñoz y otros

    Demandantes-recurridos

        vs.                CC-2005-1142      CERTIORARI

Jaime Rivera Martínez y otros

    Demandado-peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 1 de mayo de 2007

Para el año 1986, Jaime Rivera Martínez y Luis Ortiz Muñoz crearon --mediante acuerdo verbal-- una sociedad bajo el nombre de Equipos Pro-Impedidos de Puerto Rico, cuyos objetivos eran prestar servicios de mecánica, instalación, habilitación y modificación de automóviles y equipos para personas con impedimentos físicos. Ambos aportaron capital para dar inicio al negocio y convinieron en que cada socio participaría del 50% de las ganancias adquiridas.[1] Dos años más tarde, Jaime Rivera Martínez y Luis Ortiz Muñoz decidieron incorporar el negocio. Para ello, acordaron verbalmente que

---

[1] Según surge de las determinaciones de hecho del Tribunal de Primera Instancia, el señor Ortiz aportó $6,000 y el señor Rivera $2,000.

los activos de la sociedad serían transferidos a la corporación, a cambio de que cada uno obtuviera el 50% de las acciones que se emitieran de la misma. Se acordó, además, que consumado dicho acuerdo, la sociedad quedaría liquidada.

El negocio se incorporó bajo el nombre de Equipos Pro-Impedidos, Inc.[2] Posterior a ello, Rivera Martínez obtuvo el control práctico absoluto de la corporación debido a que Ortiz Muñoz se enfermó y tuvo que mudarse fuera de Puerto Rico para recibir tratamiento médico. Ortiz Muñoz solicitó, en mayo de 1988, el cumplimiento del acuerdo antes mencionado, esto es, la liquidación de la sociedad originalmente constituida mediante la emisión de acciones a su favor o la adjudicación de su parte en efectivo. Rivera Martínez se negó a hacerlo, por lo cual, la corporación siguió participando y beneficiándose de los activos de la sociedad sin emitir acciones a favor de Ortiz Muñoz.

Así las cosas, el 11 de mayo de 2000, Ortiz Muñoz, su esposa y la sociedad de bienes gananciales compuesta por ambos, presentaron ante el Tribunal de Primera Instancia, Sala Superior de Caguas, una demanda por incumplimiento de

---

[2] Según surge del expediente, Equipos Pro Impedidos, Inc., fue incorporada como una corporación con fines de lucro el 13 de mayo de 1988. Del Certificado de Incorporación surge que Jaime Rivera Martínez, Lesvia Rivera de Ortiz ––esposa de Luis Ortiz Muñoz–– y Francisco González Barreto ––contador de la empresa–– fungieron como incorporadores de la corporación en cuestión.

contrato de sociedad, disolución de contrato de sociedad, liquidación de activos en sociedad e injunction permanente en contra de Jaime Rivera Martínez y Equipos Pro Impedidos, Inc., entre otros.[3] Solicitaron, en síntesis, la división y adjudicación de los activos pertenecientes a la sociedad y transferidos a la Corporación por medio del acuerdo verbal entre Luis Ortiz Muñoz y Jaime Rivera Martínez.

Rivera Martínez contestó la demanda y reconvino, solicitando una indemnización en daños de $200,000, costas y honorarios de abogado, aduciendo que los demandantes actuaron dolosamente y le causaron múltiples daños con la presentación e interposición de la demanda en cuestión. A su vez, Equipos Pro Impedidos, Inc., contestó la demanda alegando, entre sus defensas afirmativas, que la corporación es una institución jurídica separada e independiente de sus dueños y accionistas, a saber, Jaime Rivera Martínez.

Tras varios incidentes procesales, el 30 de abril de 2004, el tribunal de instancia dictó sentencia en contra de Rivera Martínez y Equipos Pro Impedidos, Inc. Les impuso a ambos la responsabilidad solidaria de devolverle

---

[3] Del epígrafe de la demanda surge que se incluyeron, como partes demandadas, a la esposa de Jaime Rivera Martínez, la sociedad de bienes gananciales compuesta por este último y su esposa, y la sociedad civil Equipos Pro Impedidos de Puerto Rico, la cual, según alegado, aún no se había disuelto y liquidado al momento de presentarse la demanda.

a Luis Ortiz Muñoz y a su esposa, una suma equivalente a los activos que les pertenecen y de la cual, tanto Jaime Rivera Martínez como la Corporación, se beneficiaron exclusivamente desde el 1988 al no liquidar la sociedad, según convenido[4]. El referido foro ordenó, además, el pago de $2,500 en concepto de honorarios de abogado, por temeridad, a favor de los demandantes y desestimó la reconvención presentada por Rivera Martínez por insuficiencia de evidencia.

Oportunamente, Ortiz Muñoz presentó un memorando de costas ante el Tribunal de Primera Instancia. Entre las costas allí desglosadas, incluyó la suma de $3,443.75 por concepto de honorarios de abogado <u>pagados con posterioridad a una alegada oferta de sentencia hecha conforme a la Regla 35.1 de las de Procedimiento Civil y rechazada por la parte demandada</u>. Según surge del expediente, el 29 de octubre de 2003 la parte demandante le cursó una carta a la parte demandada informándole <u>que estaba en la disposición de transigir el caso si se le pagaba la suma de $35,000</u>.

Rivera Martínez y Equipos Pro Impedidos, Inc., se opusieron aduciendo que la Regla 35.1 no es aplicable a ofertas hechas por la parte demandante, pues la misma sólo se encuentra disponible a la parte demandada o a la parte

---

[4] Específicamente, les impuso el pago de $26,448, más intereses desde mayo de 1988, fecha en que se registró la corporación y se solicitó la liquidación, hasta que la sentencia advenga final y firme.

que se defiende de una reclamación. No obstante lo antes señalado, el Tribunal de Primera Instancia dictó orden aprobando, en su totalidad, el memorando de costas presentado por la parte demandante.

Insatisfecha, la parte demandada acudió ante el Tribunal de Apelaciones aduciendo, en lo pertinente, que el tribunal de instancia erró al conceder honorarios de abogado en virtud de la Regla 35.1 de las de Procedimiento Civil y al imponer responsabilidad solidaria entre Jaime Rivera Martínez y Equipos Pro Impedidos, Inc., cuando dicha responsabilidad no se presume y debe pactarse expresamente. El tribunal apelativo intermedio confirmó la determinación del tribunal de instancia en todos sus extremos, incluyendo, la aprobación del memorando de costas con las sumas allí incluidas.

El foro apelativo intermedio entendió que el memorando de costas no se presentó al amparo de la Regla 35.1 de las de Procedimiento Civil y que procede la imposición de responsabilidad solidaria en virtud del Artículo 1802 del Código Civil bajo el supuesto de solidaridad legal como co-causantes de un daño. El Tribunal de Apelaciones emitió la sentencia antes esbozada sin el beneficio de la transcripción o exposición narrativa estipulada de la prueba oral vertida en el juicio, debido al reiterado incumplimiento de Rivera Martínez al no presentar dicha transcripción o exposición, según le ordenara el tribunal.

Inconformes, Rivera Martínez y Equipos Pro Impedidos, Inc., acudieron --mediante recurso de *certiorari*-- ante este Tribunal. Aducen que procede revocar la sentencia emitida por el foro apelativo intermedio debido a que éste incidió:

> … al determinar en la Sentencia apelada que los codemandados incurrieron en temeridad cuando el monto de la Sentencia recaída fue mucho menor que la oferta de transacción presentada.

> … al determinar en la Sentencia apelada que existe solidaridad extra-contractual ante el demandante entre el co-demandado Jaime Rivera Martínez y la corporación co-demandada Equipos de Impedidos, Inc. [sic].

> … al determinar que la parte apelante no cumplió con el rigor de presentar la exposición narrativa de la prueba conforme dispuesto por el Reglamento del Tribunal de Apelaciones.

Expedimos el recurso. Estando en posición de resolver el mismo, procedemos a así hacerlo.

I

Conforme al trasfondo fáctico expuesto, nos corresponde resolver las siguientes controversias:

A.    ¿Aplican las disposiciones de la Regla 35.1 de las de Procedimiento Civil a ofertas de transacción hechas por la parte demandante?

B.    ¿Procede la imposición de responsabilidad solidaria entre Jaime Rivera Martínez y Equipos Pro Impedidos, Inc.? De proceder, ¿bajo qué supuesto?; y

C.       Por último, ¿abusó de su discreción el Tribunal de Apelaciones al considerar el recurso sin el beneficio de la transcripción o la exposición narrativa de la prueba oral vertida en juicio?

II

La oferta de sentencia es una proposición escrita dirigida a la parte reclamante, mediante la cual el demandado o la parte contra la cual se reclama se allana a que se dicte sentencia en su contra bajo los términos expuestos en la oferta. R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, San Juan, Michie de P.R., 1997, sec. 3804, p. 268. En nuestro ordenamiento jurídico, dicha figura se encuentra regulada mediante las disposiciones de la Regla 35.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, la cual dispone que:

> [e]n cualquier momento antes de los diez (10) días precedentes al comienzo del juicio, la parte que se defiende de una reclamación podrá notificar a la parte adversa una oferta para consentir a que se dicte sentencia en su contra por la cantidad o por la propiedad o en el sentido especificado en su oferta, con las costas devengadas hasta ese momento. Si dentro de los diez (10) días siguientes a la notificación la parte adversa notificare por escrito que acepta la oferta, cualquiera de las partes podrá presentarla junto con la notificación de su aceptación y la prueba de su notificación, y entonces el secretario del tribunal dictará sentencia. Si no fuere así aceptada, será considerada como retirada y la misma no será admisible en evidencia, excepto en

un procedimiento para determinar costas, gastos y honorarios de abogado. <u>Si la sentencia que obtuviere finalmente la parte a quien se le hizo la oferta no fuera más favorable, ésta tendrá que pagar las costas, gastos y honorarios de abogado incurridos con posterioridad a la oferta</u>. El hecho de que se haga una oferta y ésta no sea aceptada no impide que se haga otra subsiguiente. Cuando la responsabilidad de una parte haya sido adjudicada mediante sentencia pero queda aún por resolverse en procedimientos ulteriores la cuantía de los daños o extensión de dicha responsabilidad, la parte cuya responsabilidad se haya adjudicado podrá notificar una oferta de sentencia y la misma tendrá el mismo efecto que una oferta hecha antes de[l] juicio si se notifica dentro de un término razonable no menor de diez (10) días antes del comienzo de la vista. (Énfasis suplido.)

Como puede deducirse de su texto, el propósito principal de esta Regla es fomentar las transacciones. <u>H.U.C.E. de Ame. v. V. & E. Eng. Const.</u>, 115 D.P.R. 711 (1984). A su vez, constituye un mecanismo procesal efectivo para reducir los costos de la litigación civil, adelantar la pronta disposición de las reclamaciones judiciales y reducir la carga de los tribunales. <u>Ramallo Brothers v. Federal Express Corp.</u>, 129 D.P.R. 499 (1991).

Sin embargo, no toda oferta de transacción constituye una oferta de sentencia bajo los términos y condiciones de la Regla 35.1 de las de Procedimiento Civil. De una simple lectura de la referida Regla, podemos percatarnos que ésta establece distintos <u>requisitos</u> para la configuración de una oferta de sentencia, que conlleve, como consecuencia, la imposición de costas, gastos y honorarios de abogado

para cuando se rechaza la oferta y no se obtiene una sentencia más favorable.

Particularmente, la antes citada Regla sólo contempla las ofertas que oportunamente hace la "parte que se defiende de una reclamación", entiéndase, de ordinario, demandado, tercero demandado, demandado contra co-parte y parte reconvenida, incluyendo, la parte demandante-reconvenida, mejor conocida como parte contra-demandada.[5] Véase Morell Corrada v. Ojeda, 151 D.P.R. 864 (2000); y J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo I, Publicaciones JTS, 2000, p. 582.

Ello significa que una oferta formal de transacción por parte del demandante, que no se defiende de una reclamación, no constituye una oferta de sentencia bajo los términos de la Regla 35.1 de las de Procedimiento Civil y, por ende, su rechazo no conlleva la imposición de

---

[5] A manera de ejemplo, imaginemos que A y B sufrieron daños por la negligencia comparada de ambos. B, a pesar de que incurrió en un por ciento mayor de negligencia, fue quien sufrió más daños. A presentó, entonces, una demanda en contra de B en daños y perjuicios. Por su parte, B presentó una reconvención en contra de A, en la cual reclamó una indemnización en daños y perjuicios mayor a la reclamada por A en su demanda. De proceder ambas reclamaciones, A tendría que pagarle a B una suma mayor a la reclamada por A en su demanda, independientemente de que B incurrió en un por ciento mayor de negligencia. Ello debido a que los daños sufridos por B sumarían a una cifra mayor a los daños sufridos por A. A, parte demandante-reconvenida, le cursa una oferta a B informándole que estaría dispuesta a pagarle cierta suma de dinero para ponerle fin al pleito. Dicha oferta cualificaría como una oferta de sentencia, siempre y cuando, se cumplan los demás requisitos de la  Regla 35.1 de las de Procedimiento Civil.

las costas, gastos y honorarios de abogado dispuestos en dicha Regla.

Tomando en consideración lo antes expuesto, entendemos que, en el caso de epígrafe, no se configuró una oferta de sentencia bajo los términos y condiciones de la Regla 35.1 de las de Procedimiento Civil. Aun cuando de los hechos surge que Luis Ortiz Muñoz, parte que cursó la oferta, es parte demandante-reconvenida en el caso de epígrafe --en virtud de la reconvención presentada por Rivera Martínez en su contra-- y que ello la convirtió en una "parte que se defiende de una reclamación", dicho calificativo no es suficiente para que la oferta cursada sea una oferta de sentencia. Si una parte es considerada como "parte que se defiende de una reclamación" en virtud de una reconvención presentada en su contra, precisa que: 1. la suma incluida en su oferta vaya dirigida a poner fin a la reclamación hecha en su contra mediante reconvención, y, sobre todo, que 2. esté dispuesta a pagar la suma incluida en su oferta, por la cual se dictará sentencia en su contra.

El texto de la Regla es claro al exponer que mediante una oferta de sentencia la parte que se defiende de una reclamación consiente a que se dicte sentencia en su contra por la cantidad ofrecida. En el caso ante nuestra consideración, la suma ofrecida por Ortiz Muñoz no iba dirigida a poner fin a la reclamación en daños, hecha en su contra mediante reconvención. En ningún momento la

parte demandante --en calidad de parte reconvenida-- estuvo dispuesta a pagar $35,000 para poner fin a la reclamación en daños presentada por Jaime Rivera Martínez por medio de reconvención y, mucho menos, a que se dictase sentencia en su contra por dicha reclamación.

La oferta cursada no fue más que una oferta formal de transacción hecha por la parte demandante para poner fin al pleito original instado por ella, si la parte demandada pagaba la suma incluida en la oferta. Por lo cual, rechazarla no conlleva la imposición de las costas, gastos y honorarios de abogado dispuestos en la Regla 35.1 de las de Procedimiento Civil, para cuando se rechaza la oferta de sentencia y no se obtiene una sentencia más favorable.[6]

Resolvemos, en consecuencia, que tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones erraron al aprobar el memorando de costas en su totalidad, en vista de que dicho memorando contenía la suma de $3,443.75, erróneamente reclamada por la parte demandante, por concepto de honorarios de abogado pagados con posterioridad a la alegada oferta de sentencia rechazada por la parte demandada. Por consiguiente, y en virtud de

---

[6] Jaime Rivera Martínez también aduce que no procede la imposición de honorarios de abogado en virtud de la Regla 35.1 de las de Procedimiento Civil debido a que la sentencia obtenida fue más favorable. A su vez, la parte recurrida alega que la sentencia emitida no es más favorable si se toman en consideración los intereses impuestos. Debido a que la oferta hecha no cualifica como una oferta de sentencia, no discutiremos los señalamientos hechos al respecto.

lo antes resuelto, procede la <u>eliminación</u> de dicha suma de dinero del memorando de costas presentado por la parte demandante-recurrida.

## III

En su segundo señalamiento de error, los peticionarios sostienen que no procede la imposición de responsabilidad solidaria entre Jaime Rivera Martínez y Equipos Pro Impedidos, Inc., bajo el supuesto de solidaridad legal <u>como co-causantes de un daño</u>. Entienden que de haber alguna responsabilidad la misma es personal de Jaime Rivera Martínez y no corporativa.

Luego de un examen minucioso del expediente, no podemos avalar la imposición de responsabilidad solidaria entre Jaime Rivera Martínez y Equipos Pro Impedidos, Inc., <u>como co-causantes de un daño</u>. En ningún momento la parte demandante reclamó indemnización en daños y perjuicios por un acto culposo o negligente, ni surge del expediente que haya probado los elementos necesarios para imponer responsabilidad bajo el Artículo 1802 del Código Civil, 31 L.P.R.A. § 5141. Ni siquiera surge de la sentencia emitida por el Tribunal de Primera Instancia que la imposición de responsabilidad solidaria haya sido bajo dicho supuesto. Tampoco podemos recurrir al Artículo 1090 de nuestro Código Civil, 31 L.P.R.A. § 3101,[7] para reconocer vínculos

---

[7] Dicho Artículo dispone: "[l]a concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación
(Continúa . . .)

de solidaridad entre las partes involucradas, pues no existe acuerdo alguno en que se haya pactado expresamente la responsabilidad solidaria entre éstas.

Sin embargo, ello no significa que no exista otro supuesto de responsabilidad bajo el cual ambas partes demandadas estén sujetas a responderle solidariamente a la parte demandante por la suma concedida en la sentencia emitida. Veamos.

IV

En el campo del derecho corporativo, los tribunales han elaborado y desarrollado la figura de los promotores como respuesta a las controversias que, de ordinario, se suscitan en la etapa de promoción de una corporación que aún no ha advenido a la vida jurídica. "La promoción de la corporación se refiere a las gestiones que se llevan a cabo antes de que la corporación sea incorporada, con el fin y propósito de organizar, desarrollar, darle forma o establecer el negocio y actividad a la que se va a dedicar la corporación." L. M. Negrón Portillo, Derecho Corporativo Puertorriqueño, Segunda Edición, Puerto Rico, 1996, p. 34.

---

no implica que cada uno de aquéllos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria".

"[U]na corporación no nace a la vida jurídica espontáneamente, sino como resultado de los arreglos y las gestiones de varias personas que con sus esfuerzos hacen viable su creación." C.E. Díaz Olivo, Derecho Corporativo: Corporaciones, San Juan, Publicaciones Puertorriqueñas, 1999, p.20. Son los promotores quienes promueven la constitución de la corporación y llevan a cabo las distintas gestiones preparatorias para dar comienzo a la nueva entidad corporativa, usualmente, mediante la asunción de obligaciones. C.E. Díaz Olivo, Derecho Corporativo: Corporaciones, ante, p.20. A modo de ejemplo, podemos mencionar, las gestiones dirigidas a la adquisición de bienes o activos con los cuales la corporación comenzará a ejercer sus operaciones.

Ante la falta de legislación específica que regule la etapa de promoción de una corporación y la figura de los promotores, los tribunales han desarrollado varias doctrinas para pautar los derechos, deberes y responsabilidades que surgen de los acuerdos o contratos que los promotores pactan durante la etapa de promoción de una corporación.[8]

---

[8] Nuestra legislación corporativa --al igual que muchas legislaciones corporativas de las distintas jurisdicciones en los Estados Unidos-- no regula la etapa de promoción de una corporación, ni la figura de los promotores. Por lo cual, resulta necesario --para fines ilustrativos-- acudir a la jurisprudencia y a las decisiones de distintos tribunales para conocer el contorno de las doctrinas establecidas y desarrolladas al respecto en el derecho de las corporaciones.

Como regla general, el promotor es el único responsable frente a las personas con las cuales contrató en previsión de la incorporación de una futura entidad corporativa. Una vez la entidad corporativa adviene a la vida jurídica mediante el proceso de incorporación, ésta puede quedar vinculada por los acuerdos hechos por el promotor, si media un acto afirmativo de su parte mediante el cual se entienda que adoptó, explícita o implícitamente, los referidos acuerdos. Al respecto, el Profesor Carlos Díaz Olivo nos señala:

> … la corporación será responsable siempre y cuando adopte el contrato. La adopción puede ser expresa o implícita. Será expresa cuando la junta de directores de la corporación apruebe una resolución en la que específicamente asuma la responsabilidad y los beneficios del contrato negociado por el promotor…. La aprobación será implícita cuando, a pesar de no existir una expresión especifica de algún cuerpo rector de la corporación adoptando el contrato, la entidad se aprovecha de sus beneficios con conocimiento pleno del contrato y de los términos en que fue negociado. C.E. Díaz Olivo, _Derecho Corporativo: Corporaciones_, ante, p.22-23.[9]

---

[9] Véase _Villar & Co., Inc. v. Conde_, 37 D.P.R. 706 (1928) y _Berrizbeitía v. The Times Publishing, Co._, 42 D.P.R.799 (1931), en las que impusimos responsabilidad a las corporaciones involucradas en virtud de sus actos, mediante los cuales entendimos que la corporación aceptó, ratificó o confirmó los contratos allí pactados. Igual doctrina aplica en Delaware, estado del cual proviene nuestra legislación corporativa. Véase _Lorillard Tobacco Co. v. American Legacy Foundation_, 903 A.2d. 728 (2006), en la cual la Corte Suprema de Delaware expresó que: "[u]nder Delaware law, if the subsequently formed corporation expressly adopts the preincorporation agreement or implicitly adopts it by accepting its benefits with knowledge of its terms, the corporation is bound by it."

La posibilidad de una adopción implícita por parte de la corporación se debe a que si la misma acepta y obtiene los beneficios del contrato, ésta debe, de igual forma, asumir sus obligaciones. Permitir que la corporación acepte los beneficios del contrato sin asumir las responsabilidades que provienen del mismo sería consagrar un enriquecimiento injusto. W. M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations, Volume 1A, West Group, 2002, § 212, p. 441-442.

Ahora bien, para que se configure la adopción implícita de un contrato no basta con que la corporación obtenga y reciba sus beneficios. Según expresamos anteriormente, es requisito indispensable que se le pueda imputar a la corporación el conocimiento pleno del contrato y sus términos. El cumplimiento de dicho requisito dependerá de las circunstancias presentes caso a caso.

No obstante, cuando el promotor se convierte, eventualmente, en el único director y accionista de la corporación, lo razonable es imputarle a la corporación el conocimiento del contrato pactado por dicho promotor.[10] W. M. Fletcher, ante, § 210, p. 430. "[S]i los accionistas controlantes o los miembros que dominan la junta de directores de la corporación, son las mismas personas que

---

[10] Véase además, Stevens v. Acadia Dairies, Inc., 15 Del.Ch. 248 (1927), en la que se determinó que: "[k]nowledge of [the] organizer and promoter, who is sole owner thereof, is knowledge of [the] corporation."

se desempeñaron como promotores y que tenían pleno conocimiento de lo ocurrido, tal conocimiento se hará extensivo a la corporación". C.E. Díaz Olivo, Derecho Corporativo: Corporaciones, ante, p. 23.

Una vez establecida la adopción del contrato por parte de la corporación, el promotor no necesariamente se libera de su responsabilidad para con las partes con las cuales contrató. La responsabilidad del promotor continuará presente, salvo que medie una novación del contrato o un acuerdo liberando al promotor de toda responsabilidad.[11] RKO-Stanley Warner Theatres, Inc. v. Graziano, 355 A.2d 820 (Pa. 1976); Illinois Controls, Inc., v. Langham, 70 Ohio St. 3d 512 (1994); Herbert v. Boardman, 349 A.2d 710 (Vt. 1975); Ratner v. Central Nat. Bank of Miami, 414 So. 2d 210 (Fla. App. 1982); W. M. Fletcher, ante, § 190, p. 325-326; C.E. Díaz Olivo, Derecho Corporativo: Corporaciones, ante, p. 21; American Law Reports, Personal liability of promoter to third person on or with respect to contract made for corporation or in aid of promotion, 41 A.L.R. 2d 477.

De no mediar dicha novación o acuerdo, tanto el promotor como la corporación, son responsables por el contrato pactado por el promotor y la parte afectada podrá reclamarle a ambos por su incumplimiento. W. M. Fletcher,

---

[11] Dicha norma es cónsona con lo establecido en el Artículo 1159 del Código Civil, 31 L.P.R.A. 3243, el cual establece que la sustitución de la persona del deudor no puede hacerse sin el consentimiento del acreedor.

ante, § 190 y § 215, p. 326, 459-460; Wolfe v. Warfield, 296 A.2d 158 (1972). Se trata de brindarles a aquellas personas que contrataron con el promotor una doble seguridad ante un posible incumplimiento de contrato. Así lo afirma el Profesor Howard L. Oleck, en su obra "Modern Corporation Law", al expresar que:

> … unless and until there is a novation, the promoter is held to continue liable on his contracts made on behalf of proposed corporations. Many cases in our own courts set forth this principle with equal strictness. They proceed upon the … premise that the law assures persons dealing with promoters of corporations to be formed the double security of the promoter and of the corporation, unless a definite intention to the contrary can be shown. H.L. Oleck, Modern Corporation Law, Volume 1, Indianapolis, Bobbs-Merrill Co., Inc., 1958, p.201.

Aceptada la responsabilidad compartida por el promotor y la corporación, ¿es ésta de carácter solidaria? En distintas jurisdicciones de los Estados Unidos, donde la figura de los promotores ha tenido un desarrollo más amplio que en nuestro País, se ha contestado dicha interrogante en la afirmativa. A modo de ejemplo, podemos mencionar el Estado de Ohio donde la Corte Suprema de dicho Estado precisamente resolvió, en Illinois Controls, Inc. v. Langham, ante, que:

> [w]here a corporation, with knowledge of the agreement´s terms, benefits from a pre-incorporation agreement executed on its behalf by its promoters, the corporation and the promoters are jointly and severally liable for breach of the agreement unless the agreement provides that the performance is solely the responsibility of the corporation or, subsequent

> to the formation of the corporate entity, a
> novation is executed whereby the corporation is
> substituted for the promoters as a party to the
> original agreement.

De igual forma, la Corte Apelativa para el Tercer Circuito del Estado de la Florida, dispuso en Ratner v. Central Nat. Bank of Miami, ante, que la responsabilidad del promotor y la corporación es un supuesto de solidaridad pasiva. A esos efectos, expresó:

> [t]he later formation of the corporation and
> subsequent adoption or ratification of the
> contract by the corporation does not necessarily
> release a promoter from liability, but may
> result in joint liability of the promoter and
> corporation, absent a novation or express
> release by the other party to the contract.[12]

Incluso, así lo intimó la Corte Federal para el Distrito de Puerto Rico desde principios del siglo pasado al resolver en Crane v. Bennett, 3 P.R. Federal Reports 185 (1907), que la parte demandante puede presentar su reclamación por incumplimiento de contrato ya sea en contra de la corporación o en contra de los promotores, debido a que ambos son responsables por el incumplimiento.[13] Dicho derecho a elegir o a reclamarle a

---

[12] Véase I. Rivera García, Diccionario de Términos Jurídicos, Lexis, 2000, p. 698, en el cual se hace referencia a que el término "joint liability by multiple debtors" corresponde al término solidaridad pasiva.

[13] Específicamente, la Corte Federal para el Distrito de Puerto Rico resolvió que: "persons dealing with [promoters] may, upon the incorporation of the company and its ratification of the contracts made in its behalf, elect to have their remedy either against the individuals

(Continúa . . .)

sólo uno de los co-deudores por el incumplimiento del contrato es una de las facultades que otorga el carácter solidario de una responsabilidad; pues, sólo cuando la responsabilidad es solidaria puede el acreedor reclamarle a un solo co-deudor el cumplimiento total de la obligación.[14]

El Profesor Luis Negrón Portillo, en su obra Derecho Corporativo Puertorriqueño, afirma que la responsabilidad del promotor y la corporación es solidaria. Éste, al mencionar la posibilidad de que la corporación adopte o ratifique expresamente el contrato pactado por el promotor, nos indica que dicha ratificación expresa puede entenderse como un contrato entre el propio promotor y la corporación, que faculta al promotor a reclamarle a la corporación en caso de que éste responda totalmente por el incumplimiento del contrato.[15] Negrón Portillo es de la

---

with whom the contract was made, or against the company, unless, of course, plaintiffs had agreed to look to the company alone, and the latter has assumed the liability." Véase además H.L. Oleck, Modern Corporation Law, ante, § 39, p.202; y American Law Reports, ante, 41 A.L.R. 2d 477.

[14] Véase Artículo 1097 del Código Civil, 31 L.P.R.A. § 3108, el cual dispone, en lo pertinente, que: "[e]l acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra todos ellos simultáneamente".

[15] "En la ratificación expresa la corporación, mediante una resolución o documento, decide ratificar y adoptar como suyo cierto contrato en el que el promotor pactó. … [D]icho acto aislado, sin el consentimiento del acreedor no liberaría al promotor de responsabilidad. Sin embargo, podría entenderse como un contrato entre la corporación y el promotor, de forma que si el promotor paga la obligación, tendrá una acción contra la corporación." L. M.

(Continúa . . .)

opinión que, en casos donde media una ratificación o adopción expresa de la corporación y el promotor paga en su totalidad la obligación, el promotor tiene derecho a reclamarle a la corporación mediante una acción de nivelación. Dicha facultad también es característica única de la responsabilidad solidaria, pues, sólo si la responsabilidad es de dicho carácter nace el derecho de contribución o de nivelación para el caso en que un solo co-deudor pague la totalidad de la deuda.[16]

Además, la solidaridad no es figura ajena o extraña al derecho corporativo puertorriqueño. Es por ello que la responsabilidad entre dos o más promotores es solidaria y que, por disposición de ley, todas las personas que actúen como corporación sin autoridad para ello, serán responsables solidariamente de todas las deudas y obligaciones incurridas o asumidas como resultado de dicha actuación. Véase C.E. Díaz Olivo, Derecho Corporativo: Corporaciones, ante, págs. 22 y 25; y Artículo 1.06 (c) de la Ley General de Corporaciones de Puerto Rico de 1995, 14 L.P.R.A. § 2606.

---

Negrón Portillo, Derecho Corporativo Puertorriqueño, ante, p. 36.

[16] Véase Artículo 1098 del Código Civil, 31 L.P.R.A. § 3109, el cual establece, en lo pertinente, que: [e]l pago hecho por uno de los deudores solidarios extingue la obligación. El que hizo el pago sólo puede reclamar de sus codeudores la parte que a cada uno corresponde, con los intereses del anticipo".

Por todo lo cual, adoptamos, de forma definitiva en nuestra jurisdicción, como un supuesto de solidaridad legal, la responsabilidad compartida por el promotor y la corporación por el incumplimiento de los contratos pactados por el promotor y adoptados, explícita o implícitamente, por la corporación.[17] Ello, claro está, si coinciden los requisitos antes esbozados para la configuración de una adopción por parte de la corporación y no media una novación o acuerdo liberando al promotor de toda responsabilidad.

Delimitar la responsabilidad a una mancomunada, cuando la doctrina aplicable y razones de equidad y justicia favorecen lo contrario, sería limitar el derecho de la parte afectada de reclamar y recibir la totalidad de la deuda, a pesar de que tanto el promotor como la corporación se beneficiaron del contrato e incumplieron con el acuerdo con conocimiento de sus términos. Tampoco podemos avalar en nuestra jurisdicción la ausencia total de responsabilidad por parte de la corporación, por el mero hecho de que ésta no existía al momento de pactarse el acuerdo. Para ello, precisamente, y para evitar un

---

[17] De hecho, no es la primera vez que reconocemos por vía judicial el carácter solidario de una responsabilidad como un supuesto de solidaridad legal. Véase Cruz v. Frau, 31 D.P.R. 92 (1922), Cubano v. Jiménez, 32 D.P.R. 167 (1923), González v. White Star Bus Line, Inc., 53 D.P.R. 659 (1938), y Rivera v. Arundel Corp., 70 D.P.R. 825 (1950), en las que establecimos, de forma definitiva en nuestra jurisdicción, el carácter solidario de la responsabilidad entre co-causantes de un daño, en virtud del Artículo 1802 del Código Civil, ante.

enriquecimiento injusto, se desarrolló la doctrina de adopción antes esbozada.

En fin, tanto el promotor como la corporación son responsables solidariamente por el incumplimiento de un contrato pactado por el promotor, siempre y cuando la corporación haya adoptado, explícita o implícitamente, el contrato y no se haya liberado al promotor de responsabilidad por medio de una novación o acuerdo a esos efectos.

V

En el caso hoy ante nuestra consideración, Jaime Rivera Martínez y Luis Ortiz Muñoz pactaron la transferencia de los activos de la sociedad a la corporación, a cambio de que cada uno obtuviera el 50% de las acciones que se emitieran de la corporación. Dicho pacto no fue más que un contrato en previsión a la formación y eventual incorporación de Equipos Pro Impedidos, Inc., y, en éste, Jaime Rivera Martínez actuó como promotor de la corporación, de la cual se convirtió en único director y accionista. Así lo reconoce la propia doctrina al establecer que: "a member of a partnership who is instrumental in forming a corporation of which the member becomes an officer and director and who negotiates for the transfer of the partnership assets to the corporation is a promoter… ." W. M. Fletcher, ante, § 189, p. 321-322.

Aun cuando las partes convinieron en que, consumado el acuerdo, la sociedad se entendería liquidada, para todos los efectos prácticos, el acuerdo constituyó una gestión preparatoria para dar comienzo a la corporación; pues, mediante éste, Rivera Martínez gestionó la adquisición de los activos con los cuales Equipos Pro Impedidos, Inc., comenzó a ejercer operaciones.

Tampoco albergamos duda de que Equipos Pro Impedidos, Inc., una vez advino a la vida jurídica, adoptó implícitamente el acuerdo entre Jaime Rivera Martínez y Luis Ortiz Muñoz. Equipos Pro Impedidos, Inc., definitivamente, se aprovechó y se benefició del acuerdo al comenzar operaciones y generar sus propias ganancias mediante el uso de los activos que le fueron transferidos en virtud de dicho acuerdo.

De igual forma, surge claramente de los hechos que Equipos Pro Impedidos, Inc., adoptó el contrato en cuestión con conocimiento pleno de éste y de sus términos. Sabido es que dependiendo de las circunstancias es posible imputarle el conocimiento del promotor a la corporación. Aquí, Jaime Rivera Martínez fue quien llevó a cabo el acuerdo en calidad de promotor, y quien, eventualmente, se convirtió en el único director y accionista de la corporación. Ante dichas circunstancias, el Derecho nos permite hacerle extensivo a la corporación el conocimiento que Jaime Rivera Martínez posee del contrato.

En virtud de lo antes expuesto, y ante la ausencia de una novación o pacto liberando a Rivera Martínez de responsabilidad en calidad de promotor, <u>concluimos</u> que Rivera Martínez y Equipos Pro Impedidos, Inc., son responsables solidariamente por el incumplimiento del acuerdo pactado con Luis Ortiz Muñoz.[18] Ambos deben responder solidariamente por la suma concedida mediante sentencia, la cual constituye el valor en efectivo de los activos pertenecientes a Luis Ortiz Muñoz y transferidos a la corporación mediante el acuerdo incumplido, más los intereses correspondientes. Ello, más bien, constituye una resolución del acuerdo pactado, a la cual, sin duda, Luis Ortiz Muñoz tiene derecho en virtud del Artículo 1077 del Código Civil, 31 L.P.R.A. 3052.[19]

---

[18] Aún si consideramos a Luis Ortiz Muñoz como un co-promotor de la corporación, el resultado es el mismo. Ante el tipo de acuerdo pactado, mediante el cual las partes convinieron en la proporción y división de las acciones a ser emitidas, aplica la misma doctrina aquí analizada. "An agreement among the promoters as to the proportions in which the stock of the corporation shall be divided among them is binding on the promoters, although not upon the corporation as such, unless and until it legally adopts the contract." W. M. Fletcher, ante, § 191, p. 331.

[19] Dicho artículo de ley, dispone, en lo pertinente, que: [l]a facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe. El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible". Distinto sería si el acuerdo hubiese estado dirigido a la formación en sí de la corporación, debido a que los acuerdos o convenios para formar una corporación, de ordinario, no se

(Continúa . . .)

En resumen, confirmamos la imposición de responsabilidad solidaria entre Jaime Rivera Martínez y Equipos Pro Impedidos, Inc., aunque por <u>fundamentos distintos</u> a los aducidos por el tribunal apelativo intermedio en su sentencia.

VI

Por último, nos resta determinar si el tribunal apelativo intermedio abusó de su discreción al considerar el recurso sin el beneficio de la transcripción o exposición narrativa de la prueba oral vertida en juicio. Luego de un detenido examen de los sucesos ocurridos ante el Tribunal de Apelaciones, respondemos en la negativa.

Del expediente surgen las múltiples órdenes emitidas por el tribunal apelativo intermedio, dirigidas éstas a que la parte aquí peticionaria presentara la transcripción de la prueba oral vertida en juicio. La parte aquí peticionaria, no cumplió con las mismas y se limitó a presentar una exposición narrativa de la prueba sin estipular. El Tribunal de Primera Instancia aprobó dicha exposición sujeto a que ésta fuese fiel al contenido de la transcripción de la prueba oral, conforme a una

_____

harán cumplir específicamente, dependiendo de los factores y circunstancias presentes en cada caso. Véase <u>Vázquez v. Tribunal Superior</u>, 78 D.P.R. 744, 753 (1955), en la cual expusimos que sería fútil ordenar la organización de una corporación que tendría que ser disuelta casi inmediatamente porque hay una controversia y división irreconciliable entre los accionistas.

regrabación solicitada. No surge del expediente que la parte apelante-peticionaria haya cumplido con dicha condición.

Así las cosas, el tribunal apelativo intermedio decidió resolver el recurso sin el beneficio de la transcripción o la exposición narrativa. Previo a ello, le otorgó a la parte apelante-peticionaria múltiples términos y oportunidades para cumplir con sus órdenes, le impuso sanciones económicas a su representación legal y le apercibió sobre la posible desestimación del recurso.

Ante dicho cuadro fáctico, no podemos avalar la posición de los peticionarios. La parte aquí peticionaria, parte interesada, no actuó con la diligencia requerida respecto a la presentación de la transcripción o exposición narrativa de la prueba.

Siendo así, concluimos que el tribunal apelativo intermedio no abusó de su discreción; máxime cuando de su sentencia se deduce que no alteró las determinaciones de hecho del tribunal de instancia y que --ante el reiterado incumplimiento de la parte peticionaria con sus órdenes-- estaba, incluso, facultado para desestimar el recurso presentado. Regla 83 (B) (3) y 83 (C) del Reglamento del Tribunal de Apelaciones.

VII

En mérito de todo lo antes expuesto, procede dictar Sentencia, modificatoria de la emitida por el Tribunal de

Apelaciones, y devolver el caso al Tribunal de Primera Instancia para procedimientos ulteriores consistentes con lo aquí expresado.

Se dictará Sentencia de conformidad.


                                        FRANCISCO REBOLLO LÓPEZ
                                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Ortiz Muñoz y otros

    Demandantes-recurridos

        vs.                    CC-2005-1142        CERTIORARI

Jaime Rivera Martínez y otros

    Demandados-peticionarios

SENTENCIA

San Juan, Puerto Rico, a 1 de mayo de 2007

Por los fundamentos expuestos, en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia modificatoria de la emitida por el Tribunal de Apelaciones en el presente caso; devolviéndose el mismo al Tribunal de Primera Instancia para procedimientos ulteriores consistentes con lo aquí expresado.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez está "conforme con la Parte II y Parte VI de dicha ponencia pero disient[e] de la Parte IV.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo